# FRANCES ANGELO, Respondent, v CARL M. ANGELO, Appellant.

Second Department, May 12, 1980

## APPEARANCES OF COUNSEL

*Stanley E. Kooper (Clara Gonzalez Schwabe* on the brief), for appellant.

*Pirrotti & Imperato (Gerard A. Imperato* of counsel), for respondent.

## OPINION OF THE COURT

HOPKINS, J. P.

From the judgment of divorce granted to the plaintiff wife the defendant husband appeals, seeking review of the provisions distributing certain property and awarding alimony, child support and counsel fees. Although we conclude that Special Term's judgment should be affirmed insofar as appealed from, and that extended discussion of all of the issues raised by the defendant is not required, we treat at length that provision of the judgment which directs the equal division of joint bank accounts and the refund of income taxes arising from a joint return filed by the parties, though the earnings reported were attributed solely to the defendant.

■■ We hold that Special Term is empowered to decide the manner of the division of these assets. Under the circumstances of this case, we find that Special Term properly determined that the plaintiff was entitled to share equally in the division of the joint bank accounts and the refund.

### I

The plaintiff and defendant were married on May 21, 1966. Three children, now aged 12, 10, and 8, were born of the marriage. The parties separated in April, 1978, and this action for divorce was commenced by the plaintiff. The defendant in his answer counterclaimed for divorce. The plaintiff's motion for temporary alimony and child support was granted; Special Term further ordered that the defendant pay the carrying charges on the jointly owned marital residence.

At the trial the defendant withdrew his answer and the plaintiff proceeded by inquest to establish grounds for divorce. Relegated to Special Term for decision were issues of permanent alimony and child support, the possession of the marital home, the payment of counsel fees, the apportionment of personal property, and the arrears of temporary alimony and child support. Special Term, after hearing the evidence, made the following determinations:

1. The plaintiff was awarded $750 monthly as alimony and child support, out of which she was to make all payments to maintain the marital home.

2. Exclusive possession of the marital home was granted to the plaintiff, until the majority or emancipation of the youngest child, or the remarriage of the plaintiff, or her cohabitation with a male not her relative.

3. The plaintiff was given $4,000 for counsel fees.

4. The plaintiff was awarded the sum of $3,500 as her share of joint bank accounts and the income tax refund arising from a joint tax return filed by the parties.

5. The defendant was directed to pay $750 as arrears in temporary alimony and child support.

On this appeal the defendant contests all of these determinations. We see no reason to set out in detail the defendant's contentions on all of the issues. We have reviewed the evidence before Special Term and see no cause to interfere with its discretion in fixing permanent alimony, child support and counsel fees, in granting exclusive possession of the marital home under the conditions stipulated, and in directing the payment of the arrears under the temporary order of alimony and child support.

The issue of the division of the bank accounts and income tax refund is not so easily resolved, and the evidence and applicable law require fuller examination.

II

Prior to July, 1977 the defendant was employed by the New York City Fire Department, earning a salary of $300 weekly. At that time the parties had one joint bank account, having a balance of about $8,000; in addition, they held a second bank account, having a balance of $592 as of December 31, 1977.

In July, 1977 the defendant was placed on sick disability status by the Fire Department; and in May, 1978 he received a lump-sum payment of $7,000 from the Fire Department. His pension based on his departmental service was set at $1,250 monthly.

The defendant argues that the plaintiff is not entitled to any part of the bank accounts, because all deposits into the accounts were derived from his funds and there was no intention to vest an interest on behalf of the plaintiff in the accounts. This view, however, ignores entirely the effect of

subdivision (b) of section 675 of the Banking Law, prescribing that in respect to a joint deposit the "making of such deposit * * * shall * * * be prima facie evidence * * * of the intention of both depositors * * * to create a joint tenancy".

■ Each of the accounts was established before the disagreement and separation of the parties. Absent clear evidence to the contrary, the opening of the accounts in the joint names of the husband and wife implies an intention, no matter from whom the funds were derived, that the spouses were jointly interested in the accounts. Again, absent clear evidence to the contrary, their interests may be presumed to be equal. In the event of the dissolution of the marriage, Special Term was empowered to direct the payment of some $2,000, representing the plaintiff's share, to the plaintiff (see Domestic Relations Law, § 234; cf. *Tsavaris v Tsavaris,* 40 NY2d 970). We have previously enforced the provisions of section 675 of the Banking Law to apportion joint bank accounts between husband and wife *(Markland v Markland,* 67 AD2d 940; *Parlato v Parlato,* 44 AD2d 720).

We do not consider *Matter of Kleinberg v Heller* (38 NY2d 836) to hold the contrary. There, a niece of a decedent claimed a bank account opened by the decedent in the name of herself and the niece as joint tenants. The question before the court was whether the niece was entitled to ownership of the funds in the account upon the death of the decedent, who had contributed all of the money in the account. It appeared that the niece, for her own business purposes, had withdrawn all of the funds prior to the death of the decedent. Those circumstances present an issue quite apart from the case at bar.

Hence, we affirm the disposition made by Special Term with respect to the bank accounts.

### III

The parties filed joint income tax returns, though the income was attributable solely to the salary of the defendant. The refunds were made payable by check to both parties. The defendant urges that, under our decision in *Fritz v Fritz* (61 AD2d 1007), Special Term erred in directing the equal division of the refund between the plaintiff and the defendant.

We do not find that *Fritz* is controlling. In *Fritz* we said only that "[t]he record before us does not indicate * * * the portion, if any, of the refund check which was attributable to

the plaintiff's earnings", and consequently we remanded the action to Special Term for a further hearing. The record in *Fritz,* though not disclosed by our memorandum, showed that the plaintiff wife and the defendant husband had filed individual State and Federal tax returns, and that each was entitled to a refund. The question thus became relevant as to the proper allocation of the refund check, since the record was silent whether the wife had received a refund on her own return. This, of course, is not the posture of the facts before us here.

There are, indeed, few decisions and scant comment on the issue of the proper allocation of tax refunds flowing from joint marital income tax returns.* The nature of the interests of the joint taxpayers must be considered in the light of the tax statutes, the common law, and the purposes of section 234 of the Domestic Relations Law, and our analysis of the plaintiff's and defendant's rights must be directed by their force and the circumstances of the marriage.

█ Here, the defendant was the wage earner, and his salary was of necessity subject to withholding by his employer. Doubtless the parties were swayed by the pecuniary advantage to the family as a whole to the decision to file a marital joint tax return, even though the plaintiff had earned no income (see US Code, tit 26, § 6013, subd [a]). But where the advantages are taken, the burdens must also be accepted. The statute authorizing the filing of the marital joint return provides that upon filing, the liability of each spouse is joint and several (US Code, tit 26, § 6013, subd [d], par [3]). Hence, the plaintiff, in signing and filing the return became jointly liable with the defendant for the payment of the tax, which, in a sense, reflects the view of the Congress that the family should be considered as both a social and economic unit.

The issue with respect to the ownership of income tax refunds has arisen in various factual contexts. In bankruptcy proceedings, for example, it has been held that a tax refund payable under a joint marital return, but derived only from the husband's earnings, must be applied toward the satisfaction of the husband's creditors *(Matter of Wetteroff v Grand,* 453 F2d 544; *Matter of Boudreau,* 350 F Supp 644; cf. *Matter of Carson,* 83 NJ Super 287; *Matter of Trecker,* 62 Wis 446),

---

* A notable contribution devoted to the subject is the thoughtful review in "Who is Entitled to the Joint Income Tax Refund?", Moran, 10 Family L Rev, No. 2, June, 1978 (Family Law Section, NY State Bar Assn); see, also, Ann. 67 ALR3d 1038.

following a case decided by a referee in bankruptcy in 1956 *(Matter of Illingworth,* 51 Am Fed Tax Repts 1512). The courts reasoned that no title to a refund was vested in the wife by the filing of a joint return, nor that a gift from the bankrupt husband to his wife could be presumed, since it would represent a gift made by him while insolvent. Moreover, the courts found no significance in the joint filing (and the joint refund), on the ground that the wife had signed the return for the tax advantage alone and without any other interest.

Other cases have divided the refund in proportion to each spouse's earnings shown on the return *(Matter of Buchholtz,* 259 F Supp 31; *Pettengill v United States,* 253 F Supp 321), in accord with the general principles advanced in *Wetteroff* and *Illingworth.*

In addition, there are cases involving factual patterns collateral to the issue here but which discuss the intrinsic characteristics of tax refunds. In *Graver v Illinois Dept. of Public Aid* (64 Ill App 3d 820), for example, the question was whether aid to dependent children should be reduced because the wife was the joint payee, along with her estranged husband, of a check for an income tax refund. The court held that the income reported was attributable only to the husband, and that under Illinois law no gift to the wife had been created by the filing of the return. In *Duden v United States* (467 F2d 924), a wife sued as a beneficiary under the Check Forgery Insurance Fund (US Code, tit 31, §§ 561-564), alleging that the husband had forged her name on a check payable to both for a tax refund, and that her loss constituted a claim against the fund. Finding that the refund was the result of the husband's business operations, the Court of Claims held that the wife had no interest in the refund, though her name appeared on the check.

Contrary to the view that the filing of a joint return does not itself create a relationship of joint interest (and that the refunds are to be shared according to the spouse's income), the courts of Pennsylvania have adopted a more liberal stance in estate distribution *(Matter of Green,* 14 Pa D & C 2d 595; *Matter of MacNeill,* 21 Pa D & C 2d 480). In both *Green* and *MacNeill* the court held that a widow was entitled to all the refund payable under a joint return, on the theory that a tenancy by the entirety had been established, even though the decedent's earnings had composed the great bulk of the income reflected by the return.

## IV

We do not think that the rigid application of principles of property or trust law should govern the distribution of an income tax refund upon the dissolution of a marriage and the division of marital assets. Each case must be decided on its own facts, and the court should not be fettered in achieving an equitable apportionment of assets on the dissolution of a marriage by the iron clasp of a mechanical formula.

The financial arrangements between husband and wife are intensely personal; what suits one household would throw another in disarray. Sometimes the spouses join in discharging the financial responsibilities of the family; sometimes one spouse defers to the other in managing their affairs. Sometimes they agree to keep their individual earnings and property separately; sometimes they agree to merge them. Sometimes their agreement is formal; in most instances it is not. All of these circumstances must be weighed by the court when the marriage is no longer sustainable and the distribution of the family assets is the issue. The filing of a joint income tax return must therefore be viewed in the circumstances of the general financial background of the marriage; moreover, it should be construed as a response to the tax statutes designed to confer a benefit to the married couple. In itself the exercise of the option by the spouses to file a joint return should not be interpreted as the conclusive memorial of the intent to create a joint tenancy or to make a gift by one for the other. We should look beyond the simple execution of the return to the circumstances of the marriage.

Nor should we find that because a statutory liability for a tax deficiency rests on both spouses by the filing of the return (US Code, tit 26, § 6013, subd [d], par [3]), that an intent must be presumed to provide a corresponding benefit to both spouses in the event of a tax refund. The statute prescribes an exemption from such liability in the event that the income stated omitted more than 25% of the income reportable, and the spouse applying for exemption did not know, nor have reason to know, of the omission (US Code, tit 26, § 6013, subd [e]; see, e.g., *Sanders v United States,* 509 F2d 162; *Estate of Klein v Commissioner of Internal Revenue,* 537 F2d 701, cert den 429 US 980; Ann. 31 ALR Fed 14). The liability for a tax deficiency does not accordingly fall on an innocent spouse in all cases.

Hence, we conclude that the apportionment between the

spouses of an income tax refund arising from a joint return should not be made by resort to a test based on the conditions of gift or property law, but, instead, by reference to the circumstances under which the spouses maintained the financial arrangements of their household.

## V

In this case the defendant was the wage earner, and the refund was derived from his income. It may fairly be assumed that the joint return was filed for no other purpose than to obtain an advantage which the tax statutes were designed to provide.

Nevertheless, the financial arrangements between the parties show that the plaintiff and the defendant had equal interests in the refund. The parties had maintained joint accounts established for the keeping and disbursement of their funds. The evidence demonstrated that the sums on deposit in the joint account were sizable, as was the tax refund payable to them. Special Term might justifiably draw the inference that it was intended by the parties that each was empowered to draw on the funds, no matter what may have been the original source, and that each had an equal interest in the accounts. So Special Term found with respect to the balance in the accounts, and this finding we have affirmed. If the marriage had continued, Special Term could conclude as a permissible inference that the refund check would have been deposited as well into a joint account, or, even if there had been no joint account, Special Term could have concluded that, under the circumstances of the marriage, the money would have been shared by the parties.

Special Term was accordingly entitled to find that the circumstances existing in the marriage justified an equal division of the tax refund. We are not disposed to overturn that finding.

## VI

We therefore affirm the judgment insofar as appealed from, with costs. As previously noted, we have examined the other contentions urged by the defendant and find no cause to modify the judgment.

TITONE, LAZER and GIBBONS, JJ., concur.

Judgment of the Supreme Court, Kings County, dated February 16, 1979, affirmed insofar as appealed from, with costs.