James Paris MOSELEY,
Petitioner-Appellant-Respondent,

v.

Betty MOSELEY,
Respondent-Respondent-Appellant.

Nos. 12150, 12151.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 22, 1982.

Motion for Rehearing and to Transfer to Supreme Court Denied Dec. 14, 1982.

Application to Transfer Denied
Jan. 17, 1983.

Bradley J. Fisher, John E. Price, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for petitioner-appellant-respondent.

John Alpers, Jr., Cabool, for respondent-respondent-appellant.

MAUS, Presiding Judge.

This action which now centers upon the fiscal aspects of a dissolution of marriage has a long and tortuous history. The parties were married in 1943. They reared two daughters. Commencing in 1950 the wife has suffered from a series of health problems including disorders of the bladder and colon, a ruptured appendix, tuberculosis, histoplasmosis, the removal of a portion of one lung and the surgical repair of two ruptured spinal discs. In May, 1976, she was again hospitalized and treated for a psychiatric disorder. Her treatment included medication and electrical shock treatments. She was discharged on May 28, 1976. On June 1, 1976, the parties separated.

On June 2, 1976, the husband took the wife to the office of an attorney (not now of counsel) in their community. A property settlement and joint petition for the dissolution of their marriage was prepared and signed. Shortly thereafter the wife was taken to the home of a daughter in Tennessee. On July 1, 1976, the husband only appeared in circuit court with the attorney and testified in support of the property settlement and dissolution. The wife had no notice of these proceedings. On July 12, 1976, a decree was entered dissolving the marriage and approving the property settlement. Under that property settlement the wife was to receive a 1969 Chevrolet, certain household goods, maintenance of $200 per month and the payment of her medical insurance premiums for five years or so long as the husband was employed in his current position or similar employment. At that time he was employed as a superintendent for Sho-Me-Power Corporation at an annual salary of $21,500. While in Tennessee, the wife was hospitalized for further psychiatric treatment. She returned to her home community in June, 1977.

On December 1, 1977, the wife filed a petition to set aside the property settlement and the decree of dissolution. The petition, among other things, alleged the property settlement was obtained by fraud and that she was not mentally competent to enter into a property settlement or a joint petition for the dissolution of her marriage. Trial upon that petition was held on December 1, 1978. On December 11, 1978, a judgment was entered setting aside the decree of dissolution and the property settlement approved by that decree and the same were declared to be null and void.

Thereafter, the husband was treated as the petitioner upon the joint petition. The wife filed an answer and a cross-bill for dissolution. Trial was had upon the issues so drawn on May 28, 1980, and June 17,

1980. On December 22, 1980, a decree was entered dissolving the marriage and dealing with the financial aspects of the dissolution. By that decree the wife was awarded the 1969 Chevrolet automobile and certain household goods. It was the further judgment of the court that the husband pay to the wife $100,000 and $12,417 representing medical expenses, part payment of attorney's fees and $3,000 for accrued temporary maintenance. It was further adjudged that the husband pay to the wife as maintenance the sum of $500 per month until the husband reached the age of 65, at which time the maintenance would be reduced to $250 per month. The trial court determined the value of the marital property of the parties to total $263,350.43. Except for the Chevrolet automobile and household goods mentioned, the marital property was awarded to the husband. Both parties have appealed.

The husband contends the trial court erred in setting aside that portion of the decree of July 12, 1976, dissolving the marriage as distinguished from that portion of that decree approving the property settlement. He makes this contention as a premise for arguing that the property acquired by the husband after July 12, 1976, was improperly considered by the trial court as marital property. He cites cases recognizing the severability of those portions of the decree such as *In re Marriage of Jamison,* 592 S.W.2d 181 (Mo.App.1979). He argues the insufficiency of the evidence to set aside the dissolution of the marriage.

■ The record of that trial indicates the judgment was entered by agreement. Further, the wife's petition prayed that the decree of July 12, 1976, be set aside for fraud and other bases cognizable in equity. A new docket sheet was prepared, a new case number assigned and a summons was issued and served upon the husband. It was a separate action and so treated by the trial court. *J.R. Watkins Company v. Hubbard,* 343 S.W.2d 189 (Mo.App.1961). The trial court unmistakably informed the parties that it was a separate action. The judgment of December 11, 1978, in clear terms set aside the decree of dissolution.

The husband did not appeal. He may not now attack that judgment. *State v. Gullett,* 411 S.W.2d 227 (Mo.1967); *Quincy v. Quincy,* 430 S.W.2d 638 (Mo.App.1968).

Two of the husband's remaining points concern a 520-acre farm that had been owned by his parents for approximately 60 years. By a deed dated April 17, 1973, the parents conveyed this farm to the husband, reserving to themselves a life estate. The trial court determined the farm was marital property. The husband asserts this was error as the evidence, admitted and improperly excluded, conclusively established the farm was a gift and by reason of § 452.-330.2(1) it is not marital property.

The husband's mother, in an offer of proof, testified that she intended the husband (her son) and no one else should acquire an interest in the farm. The father had a total memory loss and did not testify. The husband, by way of an offer of proof, testified the farm was a gift. His testimony that he paid no consideration for the deed was admitted.

■ The definition of the term "gift" has been considered in several recent dissolution cases. *In re Marriage of Null,* 608 S.W.2d 568 (Mo.App.1980); *Norman v. Norman,* 604 S.W.2d 680 (Mo.App.1980); *Hull v. Hull,* 591 S.W.2d 376 (Mo.App.1979); *Boyers v. Boyers,* 565 S.W.2d 658 (Mo.App.1978). The question asked and answer given by the husband used "the word 'gift' as one uses it in common everyday parlance, giving the word its ordinary, accepted meaning." *Matter of Estate of Mitchell,* 610 S.W.2d 681, 690 (Mo.App.1980). The husband's testimony should have been admitted, *Matter of Estate of Mitchell,* supra, and will be considered by this court. Rule 73.01(c)(3).

■ Nevertheless, the evidence does not establish the trial court erred in determining the farm was marital property. This is not a case in which the wife offered no evidence to refute or contradict the husband's testimony or the inferences to be drawn therefrom and did not attack his credibility as a witness. Compare *Fields v. Fields,* W.D. 33004, October 19, 1982. In

evaluating the testimony of the husband, the trial court could conclude that his actions and testimony presented so many incongruous assertions and evasive explanations as to render his testimony incredible. For example, in 1979, he was ordered to list his property, including real property claimed as his separate property, and a description thereof and a statement of its value. In response, he listed tangible and intangible personal property valued at $8,291.09 and stated that he would receive his parent's real estate when they were deceased. During his testimony he alternately stated his parents from time to time gave or loaned him substantial amounts of money. In this connection the evidence established the husband handled much of his financial affairs with cash. For example, in 1978 the net amount of his paychecks totaled $16,509, but he deposited only $5,205 in the bank. During his testimony he was asked to identify checks drawn upon his parent's account, which he had signed. He was unable to say if checks for $7,000, $5,000 and $8,000 were gifts or loans. On the other hand, he asserted a deposit of $1,200 was a gift because it sounded like it. He later asserted the transfer of $38,864.08 to his parents in the form of a check for $28,864.08 and $10,000.00 cash was the repayment of loans. The husband could find but few checks, bank statements, deposit slips or other financial records of his parents. Yet he did find checks to establish that certain farming expense deductions he claimed on his income tax return had been paid by checks he drew upon his parents' account. The conclusion of the trial court that the transfer of $38,864.08 was an attempt to conceal marital property was clearly supported by the evidence. It is significant that other incongruities and lapses of memory abound in the record. *Stead v. State,* 543 S.W.2d 501 (Mo.App. 1976).

Further, the husband's testimony concerning the farm was not only that it was a gift. He was adamant in his testimony that he had no farming activities and that he had done no farm work for his parents. In attempting to explain away his frequent

trips from the town in which he lived to the farm he said, "[F]or years I never touched a straw of hay or done nothing, only went to visit them." His father was physically unable to do any farm work. The record indicates this stemmed from a time somewhat before the deed in question. His mother said he came to the farm quite often and helped on anything there was to do. She added that he did market the cattle. Records indicate that he had made as many as 208 trips a year to the farm. The wife testified that he was there after work and on the weekends and that he brushhogged, fed the cattle, took care of the cattle and did all the outside work that had to be done to keep up the farm. On his federal income tax returns for the years 1975 through 1979, the husband claimed substantial farm losses and on schedule SE stated his self-employment business was farming. The husband and his brother prepared income tax returns for the parents. However, even though she was directed to do so by subpoena, the mother did not produce copies of the returns. The husband and the brother were unable to find them. Of particular importance is the fact that the mother did not testify that the conveyance of the farm to the husband was without consideration or was a gift.

■ The trial court was not required to accept the testimony of the husband. *Brooks v. Brockman,* 608 S.W.2d 566 (Mo. App.1980); *Marriage of Baker,* 584 S.W.2d 449 (Mo.App.1979). Nor was the trial court required to expressly find the arrangements that had been made for the conveyance of the farm, and for the husband's extensive work in its operation and the use that was made of the parents' bank account. There was a statutory presumption the farm was marital property. § 452.330. Under the evidence in this case, it was within the province of the trial court to find, as it did, that this presumption was not overcome. *In re Marriage of Null,* supra; *Anderson v. Anderson,* 584 S.W.2d 613 (Mo.App.1979).

The husband next contends the trial court erred in fixing the value of the 520-acre farm at $200,000 in that it did not take into

account the life estate reserved by the parents. An expert witness testified the value of the farm was $200,000 to $250,000. At the time of the trial, the husband's parents were 87 and 85 years old. The trial court was well aware of the life estate. The husband has not demonstrated the court did not consider the life estate of these two elderly people.

After the entry of the decree of July 12, 1976, the husband paid the wife a lump-sum of $4,000, $200 monthly maintenance and her medical insurance premiums. These payments totaled $18,295.20. He now argues this was an apportionment of marital property and this amount must be credited against the amount awarded to the wife by the decree of December 22, 1980. Again, the trial court was well aware of these payments. It determined they had been insufficient for her to maintain herself and awarded her $4,417.90 for her expenses accrued between the two decrees. The record demonstrates the trial court did consider those payments in its apportionment of December 22, 1980.

■ On December 13, 1977, the husband withdrew $38,864.08 from a savings account. The trial court found this money reached the bank account of the parents and was subsequently transferred to the husband's secretary. The husband does not complain that this finding is not supported by the evidence or that the money in the hands of the secretary is not marital property. His sole complaint is that the trial court erred in finding that those funds in December, 1980, had a value of $43,000. In September, 1979, the secretary executed two unsecured notes for $20,000 each bearing interest at 8 per cent for the $40,000 transferred to her. By the time the decree was entered on December 22, 1980, the marital funds so represented had a value in excess of $43,000. The finding of the trial court was supported by the evidence.

■ The husband also contends the trial court erred in not permitting him to pay the $100,000 in installments. He argues that a lump-sum payment will require him to liquidate his only income producing asset, the 520-acre farm. It is true caution should be exercised to avoid the forced liquidation of a business or income producing property. *Spicer v. Spicer,* 585 S.W.2d 126 (Mo.App. 1979). However, this argument of the husband is not only, in view of his steadfast disclaimer of any farming activity, hypocritical, it is not controlling. He was awarded not only the farm, but funds on deposit in excess of $49,000. Moreover, the farm was not shown to have the income production qualities as the property involved in *Spicer* and similar cases. The trial court did not err in awarding a lump-sum payment. *In re Marriage of Kueber,* 599 S.W.2d 259 (Mo. App.1980).

■ By his last point the husband asserts no maintenance should have been awarded the wife. He argues that by part-time employment and income from the $100,000 she could support herself. On the other hand, the wife contends the award of $500 per month is inadequate. Maintenance is to be granted only if the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. § 452.335.1. The statutory factors to be considered in determining the amount and duration of maintenance are set forth in § 452.335.2. "[O]n the allowance and amount of spousal maintenance, the determination made by the trial court is discretionary, and appellate review is only to determine if that discretion has been abused." *Pederson v. Pederson,* 599 S.W.2d 51, 53 (Mo.App.1980).

■ The wife has no special skills or training other than as a homemaker. Her work history includes jobs such as an Avon representative, clerk and janitor in a church. The summary of her history of physical ailments has been stated. In addition she has an extensive hearing loss. The psychiatrist who treated her stated that by reason of her emotional problems, it would be difficult for her to be gainfully employed, although "she might work at some nice job" involving no stress. However, he doubted if such employment would be avail-

able to her at age 55. The determination of the trial court that the wife was unable to be gainfully employed is supported by the evidence.

■ The husband's annual salary at the time of trial was $29,900. His net paycheck, after substantial deductions for contributions to credit unions and thrift plans, was $1,802.21 a month. He vaguely estimated his monthly living expenses at $1,200 to $1,300. While he did not itemize those expenses, he did state they included $200 per month he had been paying to the wife and $350 to $400 per month for groceries and eating out. His complaint of inability to pay the maintenance awarded is unfounded.

The same is true of the wife's claim the award was inadequate. She stated her needs to be $970 per month. She is not required to consume her property for maintenance. *Marriage of Schulte,* 546 S.W.2d 41 (Mo.App.1977). However, when the income from the $100,000 is considered as it must be, § 452.335.2(1), *Royal v. Royal,* 617 S.W.2d 615 (Mo.App.1981), it is apparent the trial court did not abuse its discretion in awarding her maintenance of $500 per month.

■ The decree does provide that when the husband reaches the age of 65, the maintenance shall be reduced to $250 per month. There is no evidence tending to show the wife's need for maintenance will be less at that time. Nor is there evidence tending to establish the inability of the husband to pay $500 per month at that age. The portion of the decree providing for the automatic reduction is not supported by the evidence and must be eliminated. *In re Marriage of Valleroy,* 548 S.W.2d 857 (Mo. App.1977); *LoPiccolo v. LoPiccolo,* 547 S.W.2d 501 (Mo.App.1977).

■ The wife also contends the trial court erred in awarding to her an insufficient share of the marital property. She emphasizes the husband's financial and marital misconduct. In awarding marital property, the trial court must consider all relevant factors including, but not limited to, those set forth in § 452.330.1. The 520-acre farm comprised approximately ⅘ths of the marital property. Within the above statutory discretion, the trial court could have considered the nature of the marital property, the source of its acquisition and the immediate obligation upon the husband to pay approximately $12,500 for past expenses and attorneys fees, as well as the award of $100,000. The consideration and application of the relevant factors is within the discretion of the trial court. *Forsythe v. Forsythe,* 591 S.W.2d 222 (Mo.App.1979). While the award borders upon being inadequate, the apportionment of marital property need not be equal and under the peculiar circumstances of this case does not constitute an abuse of discretion. *Carter v. Carter,* 616 S.W.2d 543 (Mo.App.1981).

■ The wife further claims the trial court erred because it did not determine certain items were marital property and apportion the same. This is not true of the husband's retirement account valued at $6,218.23. This account was considered and, at least by implication, was allocated to the husband. Nor is it true of the salary earned by the husband between the two decrees. The wife did not establish these earnings were not expended or represented by assets which were determined to be marital property. The evidence does establish that the husband was possessed of 1979 income tax returns in the amount of $2,084. These refunds were not dealt with by the decree of the trial court. They were acquired during the marriage and were marital property. *Pederson v. Pederson,* supra. It is just that they be apportioned ½ to each party and that the husband pay the wife $1,042. The wife also contends the trial court awarded her insufficient temporary maintenance for the period between the two decrees. The trial court did consider this point and awarded her $1,417.90 for her medical expenses and $3,000 additional temporary maintenance for this period. The husband does not complain concerning this award. The wife has not demonstrated how the trial court erred in not granting a greater amount.

The wife's final contention is that the trial court should have ordered the husband to pay to her $1,715.04 for expenses of the litigation. This amount includes expenses for depositions, transcripts, copies of records, transcript reviews and expert witness fees. In the findings of the trial court it was implicitly determined that these expenses were reasonable and necessary and should be paid by the husband. However, it was not so ordered because the trial court believed it did not have authority to do so. Section 452.355 provides the court may order a party to pay a reasonable amount for the costs to the other party of maintaining or defending a proceeding under §§ 452.300 to 452.415, including costs incurred prior to the commencement of the action. Under the circumstances of this case, this section is construed to include such expenses incurred in setting aside the first decree, as well as expenses incurred in the second trial. The section has been construed to include the payment of the fees of expert witnesses.

*In re Marriage of Pitluck,* 616 S.W.2d 861 (Mo.App.1981). It is just that these expenses be paid by the husband.

The judgment of December 22, 1980, is modified in the following respects: the portion thereof providing for the automatic reduction of maintenance is stricken; the husband is ordered and adjudged to pay the wife $1,042 as an apportionment of the omitted marital property; and the husband is ordered and adjudged to pay the wife $1,715.04 for expenses of litigation. As so modified, the judgment of the trial court is affirmed.

HOGAN and PREWITT, JJ., concur.