S89A0026, S89X0027. FRIEDMAN v. FRIEDMAN; and vice versa.
(384 SE2d 641)

GREGORY, Justice.

The Friedmans were married in December 1974 subsequent to their execution of an agreement. At that time, Lester Friedman's individual assets were worth $1.3 million, and Kathryn Friedman's assets were worth between $10,000 and $20,000. At the time of the trial of Kathryn's action for divorce, the marital assets were worth in excess of $6 million. The jury, in the equitable division portion of its verdict, awarded Kathryn the municipal bond portfolio worth $2.9 million and awarded Lester the remaining $3.1 million of marital assets. Lester filed a motion for new trial based on the argument that the award of marital property to Kathryn included property he had acquired after the parties had separated. The trial court granted the motion, and this case is before the court on Kathryn's application for interlocutory review.

1. Subsequent to the grant of Kathryn's application for interlocu-

tory review, Lester filed a cross-appeal. Kathryn filed a motion to dismiss the cross-appeal because the issues raised in that appeal went beyond the issue the trial court had certified for immediate review. She argued that, given the procedural posture of the case, Lester could bring a cross-appeal only if he perfected his appeal as an interlocutory appeal. We denied the motion to dismiss and permitted the cross-appeal to proceed.

OCGA § 5-6-34 (b) sets forth the procedure for perfecting an interlocutory appeal. This subsection provides that after appellant has filed a notice of appeal, "the procedure thereafter shall be the same as in an appeal from a final judgment." OCGA § 5-6-34 (b). Therefore, because a perfected interlocutory appeal loses its "interlocutory character" with regards to procedural aspects of the appeal, there is no procedural bar to Lester's cross-appeal brought pursuant to OCGA § 5-6-38 (a).

2. This Court granted Kathryn's application for interlocutory review and framed the issue as whether assets (except those which are never marital property, such as gifts) acquired by one spouse anytime before the judgment of divorce is granted are included in marital property under *Goodman v. Goodman*, 257 Ga. 63 (355 SE2d 62) (1987) (*Goodman III*). In granting Lester's motion for new trial, the trial court determined that under *Goodman III*, assets acquired after the action for divorce was filed were not part of the marital assets. Lester contends that because equitable division finds its basis in the partnership theory of marriage, any asset acquired after the husband and wife effectively cease to function as a partnership is separate property. We disagree.

The parties in this action have proposed four possible cut-off dates for the acquisition of marital property. The first is the date of actual separation. This date is unsatisfactory because it is uncertain and subject to manipulation. The uncertainty of the date of actual separation could give rise to otherwise unnecessary litigation. This date is unsatisfactory for the additional reason that a party could manipulate the date of separation so as to cause his or her acquisition of a substantial asset to follow on the heels of a separation and thus exclude the asset from marital property. After all, either spouse may separate from the other at will.

The second proposed cut-off date is the date a party files the action leading to divorce. While this date is certain, it suffers from the defect of being subject to manipulation. It puts the power to select the cut-off date in the hands of the party filing for divorce. This allows a party to file on the eve of a large acquisition so as to defeat the other spouse's claim.

The third proposed date is the date the order for temporary support is filed. Though this date appears in some sense to correspond to

the date established in. *Goodman III*, *Goodman III* is distinguishable. *Goodman III* involved a final decree in a separate maintenance action. We held property acquired after the decree is not marital property. It is the temporary nature of a temporary order which makes it unsatisfactory and tends to distinguish it from a final decree in a separate maintenance action. For example, a temporary order can be dismissed and another entered on a later date. This would create uncertainty as to which date was the actual cut-off date.

Of the four proposed cut-off dates, this only leaves the date of the final decree, and it is this date that we adopt. It does not suffer from the defects of the previous three possibilities. It is a date certain, not likely to move about, and is not a date one of the parties has the power to select at will. Therefore, we hold that the last date on which assets may be acquired so as to be marital assets is the date of the final decree of separate-maintenance or the date of the decree of final divorce.

### Cross-Appeal

3. Cross-appellant Lester's enumerations of error four through eight concern an agreement signed prior to the marriage. The first of these five enumerations alleges that the trial court erred in holding that the agreement had no relevance to divorce, alimony, and equitable division. We must ascertain whether the trial court abused its discretion in excluding the evidence.

> "Generally speaking, questions of relevance are within the domain of the trial court, and, absent a manifest abuse of discretion, a court's refusal to admit evidence on grounds of lack of relevance will not be disturbed on appeal . . ." " "The rule is usually stated that the judge may exercise his discretion in excluding relevant evidence if he finds that "its probative value is substantially outweighed by the risk that its admission will . . . create substantial danger of undue prejudice or of . . . misleading the jury." ' "

*Kane v. Cohen*, 182 Ga. App. 485, 487 (356 SE2d 94) (1987). We find that the trial court did not abuse its discretion in excluding evidence of the agreement.

"The cardinal rule of construction [of contracts] is to ascertain the intention of the parties." OCGA § 13-2-3. In ascertaining the intent of the parties, the court should ascertain the parties' intent after considering the whole agreement and interpret each of the provisions so as to harmonize with the others. *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 674 (34 SE2d 839) (1945). That is "[i]n construing contracts, it is important to look to the substantial purpose which must

be supposed to have influenced the minds of the parties, rather than at the details of making such purpose effectual." *Illges v. Dexter*, 77 Ga. 36, 39-40 (1886). It is clear that this agreement, taken as a whole, was only meant to apply if one party predeceased the other during the marriage. Lester points to a provision of the contract containing a clause which, when read alone, would tend to support his argument that the agreement was to be controlling upon divorce; however, under the principles set forth above, this phrase must be read in context with the surrounding language clearly evidencing that it was to apply only to Kathryn's claims upon Lester's death. Therefore, the trial court did not err in its construction of the agreement and in its ruling that the agreement is not relevant.

4. During the cross-examination of Kathryn, Lester's counsel sought to impeach Kathryn by using transcripts of prior testimony from two depositions and from a prior hearing to prove inconsistent statements. Counsel apparently read Kathryn's answers from the transcripts and asked Kathryn if she remembered making them. She responded affirmatively to each statement. Counsel then sought to use enlargements of portions of the transcripts as demonstrative evidence during his cross-examination. The trial court properly held that this was impermissible because "where the witness is read a transcript of his testimony given on a previous hearing and admits he testified as shown by the documents, [the document] may be excluded when offered in evidence." *Pethel v. Waters*, 220 Ga. 543, 553 (140 SE2d 252) (1965). See *Dickey v. State*, 240 Ga. 634, 639 (242 SE2d 55) (1978) (by admitting to prior inconsistent statement, impeachment procedure is complete).

We find Lester's other enumerations concerning the cross-examination to be without merit.

5. The remaining six enumerations concern the jury charge. Upon reviewing the charge, we find that there was no harmful error.

*The grant of new trial is reversed in S89A0026. Judgment affirmed in S89X0027. All the Justices concur.*

DECIDED OCTOBER 19, 1989 —
RECONSIDERATION DENIED NOVEMBER 8, 1989.

*Cashin & Morton, Harry L. Cashin, Jr., Raymond C. Mayer, John R. Manning, Jr., Neal J. Quirk,* for appellant.

*Johnson & Montgomery, Harry W. MacDougald, Harmon W. Caldwell, Jr., Alex D. McLennan,* for appellee.