S01A1425. SCHWARTZ v. SCHWARTZ.
(561 SE2d 96)

SEARS, Presiding Justice.

Appellant Leticia Schwartz, the ex-wife of appellee Stephen Schwartz, appeals the trial court's determination that under the terms of the parties' divorce settlement agreement, Stephen was entitled to retain funds he received for the overpayment of state and federal income taxes. Applying the standard rules of contract construction, we conclude that the settlement agreement at issue contemplated that Stephen would shoulder the entire burden of paying income taxes and also would receive any amount refunded for the overpayment of such taxes. Therefore, we affirm.

The parties were divorced by a final decree entered in 1998. The decree contained a settlement agreement that purported to resolve all issues relative to the divorce, including the division of property and the responsibility for indebtedness. The agreement made the following provisions with regard to the payment of income taxes owed for 1997:

The [parties] shall file joint tax returns for 1997. [Stephen] shall be responsible for all state and federal taxes for the

---

year 1997. . . . The parties agree that none of the income of [Stephen] payable from [his anesthesiology practice] . . . shall be income to [Leticia].

It is undisputed that in 1997 Stephen earned monthly income of $40,000, while Leticia had no separate income.

After paying state and federal income taxes for 1997, Stephen received a refund for the overpayment of taxes in the amount of $27,046, which he refused to divide with Leticia. He sought declaratory relief that he alone was entitled to the overpayment refund, which the trial court granted.

1. Settlement agreements in divorce cases must be construed in the same manner and under the same rules as all other contractual agreements.[1] It is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another.[2] Of course, the terms and phrases contained in a contract must be given their ordinary meaning.[3] As always, the paramount rule in construing a contract is to ascertain the intention of the parties.[4]

Applying these hornbook principles of contract construction to the settlement agreement in this case, we conclude that the trial court did not err in holding that Stephen was entitled to retain the funds he received for the overpayment of state and federal income taxes for 1997. The agreement plainly states that Stephen would be responsible for all state and federal income taxes for 1997 and that none of Stephen's income earned in 1997 would be considered income to Leticia for tax purposes. Thus, the parties intended that Stephen assume all liability for taxes owed in 1997, and that none of his earned income for that year would be treated as income to Leticia. It is clear from the agreement that the parties also intended for Leticia to avoid any responsibility for income tax liability in 1997.

In accordance with the terms of the agreement, the parties filed a joint tax return and Stephen paid all state and federal income taxes for 1997. As do many taxpayers, Stephen paid his income taxes through periodic income withholding, and actually overpaid the amount of income tax owed for 1997. The amount of this overpayment was returned to him by the state and federal tax authorities.

Leticia claims that the settlement agreement is silent as to how the parties would divide income tax overpayment refunds,[5] and that

---

[1] *Cousins v. Cousins*, 253 Ga. 30, 31 (315 SE2d 420) (1984).

[2] OCGA § 13-2-2 (4).

[3] OCGA § 13-2-2 (2).

[4] *McKie v. McKie*, 213 Ga. 582 (100 SE2d 580) (1957).

[5] It appears from its order that the trial court also concluded that the agreement was silent as to the disposition of income tax overpayment refunds. Our contrary conclusion in

she is entitled to half of the tax overpayment returned to Stephen. As explained above, however, the parties intended for Stephen to assume all responsibility for 1997's income taxes. Leticia must concede that the parties intended for Stephen to be responsible for paying any taxes that might still have been owed after periodic withholding in 1997. It follows that if, after withholding, taxes were overpaid, then Stephen was also entitled to receive the amount of any tax refund. In other words, because Stephen carried the entire burden of income taxes for 1997, and because Leticia avoided all responsibility for those taxes, Stephen was entitled to receive any refunds due for tax overpayment.

In essence, Leticia argues that if taxes were still owed after withholding, then Stephen would have to pay them, but if a refund was in order, he should have to divide it with her. Nothing in the settlement agreement indicates the parties intended such divergent results to turn upon whether there was a tax deficiency or an overpayment refund. To construe the agreement as Leticia urges would clearly result in a windfall to her that was not contemplated by the parties. As explained above, the parties intended that Leticia have nothing to do with the payment of income taxes for 1997, and that intention must be fulfilled regardless of whether there was an income tax refund or an income tax deficiency.[6] Accordingly, we agree with the trial court that Stephen was entitled to retain the income tax refund paid to him for 1997.

2. Furthermore, it is axiomatic that whenever possible, a contract should not be construed in a manner that renders any portion of it meaningless.[7] As explained above, the settlement agreement in this case stated that none of Stephen's 1997 income from his anesthesiology practice would be income to Leticia. The tax overpayment refund at issue in this case resulted from excessive withholdings taken directly from Stephen's income generated by his anesthesiology practice. In other words, the overpayment refund is nothing more than a portion of Stephen's income from his practice that was improperly paid to the government to satisfy tax obligations. Under

---

this opinion does not require us to reverse the trial court, however, as this Court will affirm a judgment, so long as it is right for any reason. *Shadix v. Carroll County*, 274 Ga. 560, 565 (554 SE2d 465) (2001).

[6] In this regard, it is also worth noting that Stephen could have opted not to withhold income taxes periodically, and could have simply waited until the end of 1997 to calculate the taxes he owed and then paid that amount. Alternatively, Stephen might have periodically withheld a lesser amount in 1997, in which case he might have received a negligible repayment, or no repayment at all, from state and federal tax authorities. In either of these instances, Stephen would have upheld his agreement to pay 1997's income taxes, and Leticia would have no grounds to assert her current claim.

[7] OCGA § 13-2-2 (4); *Board of Regents v. A.B. & E., Inc.*, 182 Ga. App. 671, 675 (357 SE2d 100) (1987).

the plain terms of the settlement agreement, those funds cannot be Leticia's income, and to rule otherwise would render a portion of the settlement agreement meaningless in derogation of the authorities cited above.[8]

3. Contrary to Leticia's argument, the trial court did not err by ruling on Stephen's motion for declaratory judgment without holding a trial, as both parties asked the court to rule on Stephen's motion based upon the evidence then before the court.

*Judgment affirmed. All the Justices concur, except Benham, Hunstein and Hines, JJ., who dissent.*

HUNSTEIN, Justice, dissenting.

The majority holds that because Stephen was responsible for paying any additional tax liability of the parties, he is automatically entitled to the parties' joint tax refunds, reading this entitlement into a settlement agreement despite the express admission by the parties that this issue was never contemplated by them. I dissent because there is a complete absence of evidence to support the majority's holding that under the terms of the agreement Stephen is solely entitled to the joint tax refunds and because the majority imposes upon the agreement an intent and disposition of marital property never intended by the parties.

1. It is undisputed that at the time the parties entered into the agreement, some state and federal taxes had been paid through periodic withholding of income to Stephen during the marriage. During settlement negotiations Stephen announced that the couple had *underpaid* their 1997 taxes and he anticipated a substantial tax liability when the joint return was filed. The parties admitted and the trial court specifically found that the agreement is silent as to the distribution of tax *refunds* because no such refund was anticipated. There was no need to provide for the distribution of a refund under these circumstances and thus, no such provision was included in the settlement agreement.

In construing contracts, courts should

ascertain the parties' intent after considering the whole agreement and interpret each of the provisions so as to harmonize with the others. [Cit.] That is, "[i]n construing contracts, it is important to look to the substantial purpose

---

[8] Having reviewed the record, we agree with the trial court that no evidence suggests that Stephen fraudulently concealed the likelihood of receiving tax refunds. We caution, however, that our ruling today does not apply to instances where a party to divorce proceedings has wrongly concealed information concerning tax obligations or anticipated tax refunds.

which must be supposed to have influenced the minds of the parties, rather than at the details of making such purpose effectual." [Cit.]

*Friedman v. Friedman*, 259 Ga. 530, 532-533 (384 SE2d 641) (1989). Despite the uncontested fact that no provision was made in the agreement to provide for the distribution of tax refunds, the majority strains both logic and the rules of construction to provide for a contractual contingency not anticipated by the parties. In so doing, the majority concedes, as it must, that nothing in the settlement agreement indicates that the parties intended that Stephen would be responsible for the tax liabilities and then share any overpayment with Leticia and that to construe the agreement as Leticia urges would result in a windfall "not contemplated by the parties." Majority Op. at 109. It is precisely because of the absence of intent as to the division of overpayments and the fact that the parties failed to contemplate the division of an unanticipated refund that the majority errs.[9]

Nothing in the settlement agreement supports the majority's finding that Leticia relinquished her interest in Stephen's 1997 income, which was the subject of the tax refunds in issue. The language on which the majority relies provides:

[Leticia] and [Stephen] shall file joint tax returns for 1997. [Stephen] shall be responsible for all state and federal income taxes for the year of 1997. The Parties shall file separate returns for 1998. The parties agree that none of the income of [Stephen] payable from Anesthesiology Consultants, P.C., for the 1997 and 1998 shall be income to [Leticia]. Post divorce payments made by [Stephen] for the marital residence including principle interest tax, insurance, and home owner association dues shall be considered alimony and shall be deductible by [Stephen] and income to [Leticia].

[Leticia] shall be allowed to deduct the interest on the mortgage as well as property taxes and any other such cost she can deduct subject to IRS regulation.

Other provisions in the agreement thoroughly addressed the dis-

---

[9] In support of its holding the majority notes the numerous ways in which Stephen could have manipulated the parties' tax payments so as to avoid the existence of an overpayment. See Majority Op. at n. 6. The issue before the Court, however, is not what Stephen could have done to affect the amount of the tax refund but the parties' intent with regard to the division of such refunds at the time they entered into the settlement agreement.

tribution of marital property and specifically divided assets comprised in part of Stephen's 1997 income. The tax provision quoted above is limited in its subject matter to tax issues and grants tax benefits and imposes tax liabilities upon the parties. The attribution of the 1997 income to Stephen solely for tax purposes did not remove this income from the marital estate. Thus, while the tax provision reflects that Stephen was responsible for the payment of taxes, it cannot in context with the settlement agreement as a whole be construed as providing for Leticia's relinquishment of all her interest in the 1997 income. To read the tax provision in this manner as proposed by the majority would place the tax provision in direct conflict with the distribution provisions in the agreement. This conflict is contrary to the well-established rules of contract construction which the majority recites but fails to apply.

Moreover, like the rest of the settlement agreement, this tax paragraph is completely silent as to the parties' ownership interests in joint tax refunds. Even had the parties intended to apportion tax refunds, which they admitted they did not, or intended that Leticia convey all of her interest in Stephen's 1997 income for purposes of the division of marital assets, they would have used more apt and definitive language to distribute such property as they did in those sections of the agreement specifically addressing the distribution of marital property.

The majority has created out of whole cloth a settlement provision never contemplated by the parties. The provision it imposes upon the parties directly conflicts with matters upon which the parties expressly did agree. I would recognize the undisputed fact that the parties made no provision for the distribution of joint tax refunds and rather than rectify that omission as the majority does, I would find that the refunds are unaffected by the divorce decree. See *Newborn v. Clay*, 263 Ga. 622, 623 (436 SE2d 654) (1993) ("parties to a divorce decree must specifically describe and dispose of property in which both parties have an interest or the decree will not divest either party of their interest in the property"). See *Cousins v. Cousins*, 253 Ga. 30 (2) (315 SE2d 420) (1984) (stock dividends not distributed in divorce agreement are unaffected by decree).

2. Because the parties' interests in the tax refunds were unaffected by the divorce decree, I would address the question upon which this Court granted the application for discretionary appeal, namely, which spouse in this divorce action is entitled to the joint tax refunds. The issue of who has an ownership interest in joint tax refunds is one of first impression in Georgia and there is a dearth of foreign authority. As a general proposition in bankruptcy and tax liability cases, courts have allocated joint tax refunds proportionally in accordance with tax withholdings for the taxable year or have allo-

cated joint tax refunds proportionally based on the income produced. See *Gordon v. United States*, 757 F2d 1157, 1160 (11th Cir. 1985); *In re Lyall*, 191 BR 78, 85 (II) (C) (E.D. Va. 1996) and cases cited therein. But see *Bass v. Hall*, 79 BR 653, 656 (W.D. Va. 1987) (considering parties' equitable interests in joint refunds and allocating refunds equally between husband and wife without regard to tax withholdings or income produced). In domestic relations cases, however, most courts have rejected the notion that "the rigid application of principles of property or trust law should govern the distribution of an income tax refund upon the dissolution of a marriage and the division of marital assets," *Angelo v. Angelo*, 74 A.D.2d 327, 333 (IV) (S. Ct. N.Y. 1980), and instead have adopted a policy of examining each case on its own facts so as "not [to] be fettered in achieving an equitable apportionment of assets on the dissolution of a marriage by the iron clasp of a mechanical formula." Id. See also *Nill v. Nill*, 584 NE2d 602, 604-606 (I) (B) (Ind. Ct. App. 1992); *In re Aldrich*, 250 B.R. 907 (W.D. Tenn. 2000). Under this standard, courts look to the totality of the circumstances under which the spouses maintained the financial arrangements of their household, including, inter alia, who derived the income, the purpose for which a joint return was filed, whether the parties maintained joint financial accounts on which both were entitled to draw on the funds, assigned responsibilities for discharging financial obligations of the family, and the size of the joint refund. See *Nill*, supra at 605-606; *Angelo*, supra at 333. Still other courts in divorce actions have held as a matter of law that income received from a joint tax return is marital property regardless of who earned the income or the family's financial arrangements. See *Ormiston v. Ormiston*, 523 NE2d 148, 150 (Ill. Ct. App., 1st Dist. 1988); *Phillips v. Phillips*, 351 SE2d 178, 180 (S.C. Ct. App. 1986); *Moseley v. Moseley*, 642 SW2d 953, 959 (Mo. Ct. App. 1982).

Apparently following that line of cases holding that joint tax refunds should be allocated proportionally based on income produced, the trial court in this case determined that Stephen was entitled to the joint tax refunds because he was the sole source of taxable income on which the refunds were paid. I think the better rule of law, and the rule most consistent with the holdings of this Court, is one requiring the courts to consider the facts and financial circumstances involved in each case. I agree with the *Angelo* court that:

> [t]he financial arrangements between husband and wife are intensely personal; what suits one household would throw another in disarray. Sometimes the spouses join in discharging the financial responsibilities of the family; sometimes one spouse defers to the other in managing their affairs. Sometimes they agree to keep their individual earnings and

property separately; sometimes they agree to merge them. Sometimes their agreement is formal; in most instances it is not. All of these circumstances must be weighed by the court when the marriage is no longer sustainable and the distribution of the family assets is the issue. The filing of a joint income tax return must therefore be viewed in the circumstances of the general financial background of the marriage.

*Angelo*, supra at 333 (IV).

This holding is consistent with both the statutory and case law of this State authorizing the court or jury in divorce actions to award a spouse real and personal property held in the name of the other spouse under principles of equitable distribution. See OCGA § 19-5-13; *Stokes v. Stokes*, 246 Ga. 765 (3) (273 SE2d 169) (1980) and cases cited therein; *Hendrix v. Hendrix*, 224 Ga. 662 (163 SE2d 917) (1968). The purpose behind the doctrine of equitable distribution is to "assure that property accumulated during the marriage be fairly distributed between the parties." *Campbell v. Campbell*, 255 Ga. 461, 462 (339 SE2d 591) (1986). Applying the same principle to this case, I would hold that the apportionment between spouses of joint tax refunds not disposed of in a settlement agreement must be made by reference to the facts of each case and the specific circumstances under which the spouses maintained the financial arrangements of their household. See, e.g., *Nill*, supra at 605-606. Because the trial court failed to take such factors into consideration when awarding the entirety of the joint tax refunds to Stephen, I would reverse the trial court's order granting a declaratory judgment in Stephen's favor and remand to the trial court for proceedings consistent with this opinion.

I am authorized to state that Justice Benham and Justice Hines join in this dissent.

DECIDED MARCH 11, 2002 —
RECONSIDERATION DENIED APRIL 11, 2002.

*Howard & Whatley, Molly M. Howard*, for appellant.
*James C. Metts III*, for appellee.