Carol ANDERSON, Respondent,

v.

Albert L. ANDERSON, Appellant.

No. KCD 30059.

Missouri Court of Appeals,
Western District.

June 11, 1979.

Rehearing Denied July 12, 1979.

James F. Crews, Kibbe, Crews & Gaw, Tipton, for appellant.

William J. Cason, Michael X. Edgett, Fred R. Bunch, Clinton, for respondent.

Before SHANGLER, P. J., WASSER-STROM and CLARK, JJ.

WASSERSTROM, Judge.

This is a dissolution of marriage proceeding in which the trial court divided marital property, awarded child support to the wife, and awarded her allowances for child support, maintenance and attorney's fees. The husband appeals alleging error as follows: (1) in allowing the wife an interest in items which were the husband's separate property rather than marital property, or alternatively by allowing her a greater amount than owned by the parties so as to reduce the husband to a negative net worth; (2) in allowing maintenance without making statutory findings and in any event by making an allowance which was excessive; and (3) in allowing attorney's fees to the wife because she had a superior ability to pay than did the husband.

## I.

### PROPERTY DIVISION

For the purpose of property division, the court treated the following items as being marital property: (a) a one-half interest in a 127 acre farm referred to in the evidence as "the Hood property;" (b) a 1976 Dodge automobile; and (c) household furniture. The husband contends that each of these items was in reality his separate property.

A. *The Hood Property.* The parties lived on and worked a 310 acre farm owned by the husband's mother. During the period of this marriage, the husband and his mother bought an additional 127 acres (the Hood property) for $24,000. Title was taken in the names of the husband and his mother as tenants in common with a one-half interest to each. There was testimony that the purchase price came out of a $73,000 loan from the Federal Land Bank on which the husband testified he was a co-obligor. The note itself was not introduced in evidence.

The husband was generally in charge of the farming of all 437 acres, although he also had a full time job with Panhandle Eastern Pipeline Company. Despite his farm work and that also of the wife, all proceeds from the farming were turned over to the husband's mother. The mother in turn paid all of the debt service on the $73,000 note. Proceeds of the $73,000 note were used to finance the farming operations, and it was secured by a deed of trust on the mother's 310 acres. No lien exists on the 127 acre Hood property.

■ The husband contends that his one-half interest as a co-tenant in the Hood property belongs to him separately on the ground that it was received by him as a gift from his mother within the meaning of Section 452.330–2, RSMo Supp.1973. However, subsection 3 of Sec. 452.330 provides that "[a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property * * * ." That presumption can be overcome by showing that the property was acquired by

gift, but such a showing becomes a question of fact upon which the burden of proof rests upon the one claiming that the acquisition was by gift. *Boyers v. Boyers*, 565 S.W.2d 658 (Mo.App.1978).

■ The evidence in this case showed that the husband worked both farms without any cash payment from his mother, and the trial court could reasonably have found that work to constitute consideration for transfer to the husband of a one-half interest in the Hood property. Also, the wife testified that her husband came to her with a statement that "we were going to buy this 'Hood Property'" and asked her to sign some papers in connection therewith. In any event, the trial court could reasonably find that the husband had failed to carry his burden of proof in order to show that he received the one-half interest by way of gift. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

■ B. *The Dodge Automobile.* The husband claims this item as separate property on the theory that it was purchased by use of money which he inherited from his father. The only evidence on this subject was that the automobile cost approximately $5,300, that the money for payment came from the parties' savings account, and that about half of the savings account came from an inheritance which the husband had received. Those facts bring the case within the rule of law that where marital and nonmarital property are commingled and then exchanged for new property, the newly acquired asset is marital property. *Marriage of Badalamenti*, 566 S.W.2d 229 (Mo. App.1978); *Jaeger v. Jaeger*, 547 S.W.2d 207 (Mo.App.1977).

■ C. *The Household Furniture.* The husband states in his brief that the evidence demonstrates that most of the parties' furniture was acquired by the husband either by gift from his mother or in exchange for cash inherited by him from his father. That statement is not supported by any transcript reference and we find no such evidence in the record. Rather, the evidence strongly indicates that the bulk, if

not all, of the furniture was acquired from the proceeds of a $7,000 loan for which the parties signed a note along with the husband's father as a cosigner. The husband and wife made all the payments on the note, including premiums for credit insurance on the father's life, until the father's death. At that point the remaining balance of the note was retired by proceeds from the credit life insurance.

The trial court could reasonably find from the above evidence that the husband failed in his burden of proving that the household furniture was his separate property. *Murphy v. Carron, supra.*

■ D. *Valuation of the Assets.* With respect to this subpoint, the husband argues that even if all of the above items be considered marital property, nevertheless the trial court made an improper division which had the result of forcing the husband into the position of having a negative net worth. The husband reaches this conclusion by saying that the wife was given $17,766, of which $9,525 represented a one-fourth interest in the Hood property; while the husband received assets of $14,815, plus a liability of $36,500 (one-half of the $73,000 note) for a negative net worth of $21,685. He further argues that all of this results from the fact that the Hood property has in fact no net value and that the trial court "cannot divide an equity which does not exist."

The husband's argument contains two major fallacies. First of all, he attempts to set off the entire $73,000 obligation against the Hood property. This is in the face of the fact that the evidence shows that the whole purchase price of the Hood property was only $24,000. Accordingly, the loan was more than three times the amount which was expended for the Hood property, and the balance of that loan necessarily went for other purposes. The net import of the sparse testimony on this subject indicates that the greater bulk of the proceeds of the $73,000 loan went to finance production operations on all of the acreage, particularly the 310 acres owned by the mother in her sole name. (It appears that the Hood property is used primarily for pasture.) It is obviously unfair to attribute the entire amount of this loan as an offset to the value of the Hood property, as the husband now attempts to do.

Secondly, while the husband may have been an obligor on the note (some doubt about this lingers because of the fact that the note was never introduced in evidence), it appears that the intention of the parties has always been that the whole amount of the note is to be paid for by the mother. It is amply clear that this note represents a production loan to finance the farming operation, and the mother's separate 310 acres represents the biggest part of that operation. The much greater importance attached to the original 310 acres is evidenced by the fact that a deed of trust was given on that acreage, but no lien of any kind was created against the Hood property. Still further, the mother gets all the proceeds of the entire farming operation and has paid all of the debt servicing.

On the basis of the whole record, the trial court was justified in believing that there is a reasonable expectation that the mother will retire the entire loan, without the husband being called upon to pay any part of it. The declination to treat the $73,000 loan as a reduction in the value of the marital property must therefore be affirmed. *Murphy v. Carron, supra.*

## II.

### THE ALLOWANCE OF MAINTENANCE

■ The husband argues that in order to allow maintenance the court had to first find that the wife lacked sufficient property to provide for her reasonable needs and was unable to support herself through employment. The husband's argument continues that the court's order does not contain such specific findings and is reversible on that ground alone. This argument finds direct refutation in *Butcher v. Butcher,* 544 S.W.2d 249 (Mo.App.1977) and *Broyles v. Broyles,* 555 S.W.2d 696 (Mo.App.1977).

The husband further contends that the record does not warrant such findings "be-

cause the court's division of marital property and orders for support and attorney's fees render him unable to comply with such orders and still meet his living expenses." This argument repeats in slightly different form the contention already dealt with under Point I. D of this opinion.

■ A review of the evidence with respect to this point shows that the trial court did not misstate or misapply the law, its allowance of maintenance was supported by substantial evidence and is not contrary to the weight of the evidence. *Murphy v. Carron, supra.* A detailed exposition of the facts in this connection would have no precedential value, and the husband's second point is therefore overruled under Rule 84.-16(b).

### III.

### ALLOWANCE OF ATTORNEY'S FEES

■ Under this heading the husband contends that as a result of the court's apportionment of property and orders of support and maintenance, the wife possesses an ability to pay superior to that of the husband. This contention rests in large part upon the errors already discussed under Point I. D of this opinion. The question of the relative abilities to pay is a factual one covered by the standards of *Murphy v. Carron, supra.* A detailed consideration of the facts in this connection would have no precedential value, and the husband's third point is therefore overruled under Rule 84.-16(b).

There being no error, the judgment is affirmed.

All concur.