**Juanita Sue CARTER, Appellant,**

v.

**James L. CARTER, Respondent.**

**No. WD 31462.**

Missouri Court of Appeals,
Western District.

May 4, 1981.

Ralph E. Pratt, Independence, for appellant.

Joe L. Anderson, Kansas City, for respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

KENNEDY, Presiding Judge.

After a trial of four days' length, the trial court entered a decree dissolving the six-year marriage of James and Sue Carter. They had been separated nine months before the trial and dissolution decree. Primary custody of their five-year-old son, Jason, was given to Sue, and James was ordered to pay child support of $187.50 per month and was ordered to maintain medical and dental insurance on the child. Sue asked no maintenance.

The court gave to Sue marital property valued at $96,081 and to James marital property valued at $105,376. The court also set aside to James non-marital property valued at $48,750.

Sue has appealed, claiming the court erred in several particulars. We will take up her points in order.

## 1. *Santa Fe Enterprises.*

Santa Fe Enterprises was the fictitious name under which the parties operated an unincorporated used car business as a sideline. The business was the purchase and resale of used automobiles. James was an employee of Fireman's Fund Insurance Company. His exact duties are not described, but he has a master's degree in industrial safety, and we assume his employment by Fireman's Fund is in that field. James had operated Santa Fe Enterprises before his marriage to Sue. During the marriage Sue had assisted in the operation of the business. Its headquarters was their residence and the cars they had for sale would be parked at their residence and along the public streets.

The court found the valuation of the business to be $2,000, and found that it was James's non-marital property. Sue takes exception to both such findings. She says that it should have been found to be marital property, and that it should have a valuation of $45,000 to $55,000.

We have reviewed the evidence under the standards of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and find no error in the trial court's rulings on these two points.

The only assets of the business were the inventory of used cars. The exact number of vehicles on hand at the time of the separation of the parties is not clear. There were from five to seven, three of them subject to indebtedness. Sue does not quarrel with the court's determination of the value of the inventory, but argues rather that the business had a substantial good-will value.

Sue gave the business a value of $45,000 to $55,000, which she testified was the approximate amount of annual gross sales. Sue said the business had netted $800 per month regularly, but James said in the second year before the dissolution it had made only $200 or $300. He said that in the year before the dissolution it had made $6,000 profit. Sometimes they lost money on cars.

■ There was no evidence of any good-will value of the business, other than Sue's rather extravagant appraisal. It is unlikely that a buyer would give anything at all for the business's good-will, and we cannot convict the court of error in evaluating the business at the value of its only asset, its inventory of used vehicles. *See Marriage of Baker*, 584 S.W.2d 449, 450 [2] (Mo.App. 1979).

■ The evidence also justified the court's finding that the business was James's non-marital property. As we said earlier, James had operated the business approximately four years before his marriage to Sue. During the marriage Sue certainly assisted in the operation of the business. She and James were both hustlers, in the admirable sense of that word.

The extent of her involvement was a subject of some disagreement, Sue claiming a principal role, while James said she "assisted me as I needed help." The conflict in evidence was for the trial court to resolve, of course. *Roth v. Roth*, 571 S.W.2d 659, 667 [9] (Mo.App.1978). The Santa Fe bank account was in James's name and only James could sign checks. The profits of the business were not plowed back into the business, but were used for the mutual purposes of the parties including prominently the purchase of real estate which was titled in the joint names of the parties and which became marital property. *Hull v. Hull*, 591 S.W.2d 376 (Mo.App.1979).

While the conduct of the parties may evidence an intention to place separate property into the marital pool, *Stark v. Stark*, 539 S.W.2d 779 (Mo.App.1976), *Davis v. Davis*, 544 S.W.2d 259 (Mo.App.1976), the evidence in this case does not require that conclusion with respect to Santa Fe Enterprises. The court could and did find it retained its character as James's separate property. *Hull v. Hull, supra*. That it was unincorporated rather than incorporated does not remove it from the rule of *Davis*.

### 2. Production of records.

Sue complains that the court refused to compel James to produce income tax records and the books and financial records of Santa Fe Enterprises, but the record shows no such action by the court.

### 3. 1977 Olds automobile.

■ Sue complained of the court's order requiring her to transfer to James a 1977 Olds Cutlass. The car was titled in the name of Santa Fe Enterprises, but was taken by Sue at the time of the separation and was still in her possession at trial time. Having found Santa Fe was James's separate property, it was the court's duty to order the transfer of the automobile to him. That Sue was using it for her personal use does not call for a different disposition of the car.

#### 4. Furniture.

Sue argues that the household furniture in her possession, which the court awarded to her at an evaluation of $14,200 as marital property, should have been awarded to her as non-marital property. The furniture in her possession was located in the residence of the parties at the time of their separation and was removed by Sue at that time. James's testimony was that she removed about 90 or 95 percent of the contents of the residence. Many of the items were valuable antiques.

Sue presented a list of furniture including 35 items. Some of the 35 items were ensembles of two or more pieces. Sue claimed these were non-marital property because, as to some of them, she had owned them before the marriage—and, as to the rest of them, although they were acquired during the marriage, they were purchased with the proceeds of sales of furniture owned by her at the time of the marriage. Sec. 452.330.2(2), RSMo 1978.

■ The court designated to Sue as non-marital property the items owned by Sue at the time of her marriage, and also simply omitted some such items from the decree. They were not specifically set apart to her, as required by § 452.330.1, RSMo 1978, but we will supply that omission by amending the judgment under our powers under Rule 84.14. *In re Marriage of Robinson*, 570 S.W.2d 320 (Mo.App.1978). There is a suggestion that some of the items were claimed by James's parents. They were not parties to the action and of course their claims are not adjudicated nor foreclosed. In this case we can only settle matters as between the parties. *Schulz v. Schulz*, 583 S.W.2d 735, 742 (Mo.App.1979).

■ Turning to the items acquired after marriage with proceeds of sales of Sue's previously-owned furniture, we first note that those items were presumptively marital property, having been acquired during the marriage, *Hull v. Hull, supra; Anderson v. Anderson*, 584 S.W.2d 613, 615 (Mo. App.1979); § 452.330.3, RSMo 1978, and it was Sue's burden to prove that they were within the exception of "property acquired in exchange for property acquired prior to the marriage". *Anderson v. Anderson, supra; Conrad v. Bowers*, 533 S.W.2d 614, 621 (Mo.App.1975). But we do not rest our decision upon that ground. Sue extends her claim to all the furniture removed by her from the parties' residence at the time of the separation. This included a great deal of property not on Sue's 35-item list, which had been purchased with moneys derived from a variety of sources. Some had been received by the parties as gifts. It had been commingled in the parties' residence and used by them, and there was evidence which justified the court in concluding that the property acquired from the proceeds of Sue's previously-owned furniture was effectively contributed to the marital pool and had lost its non-marital character. *DuPont v. DuPont*, 98 A.2d 493, 496 (Del.1953); *Bender v. Bender*, 282 Md. 525, 386 A.2d 772, 779–780 (1978); *DiFlorido v. DiFlorido*, 331 A.2d 174, 178–180 (Pa.1975); Ian F. G. Baxter, *Marital Property*, § 4:20, "Personalty without Instrument of Title" (1973).

#### 5. Division of marital property.

Sue's next point is that the marital property was unfairly divided. It was divided as follows:

**SUE**

| | |
|---|---|
| Residence, net of mortgage | $ 66,451.71 |
| Proceeds of 1229-31 McCoy, ordered to be sold | 13,450.00 |
| Cash | 1,980.00 |
| Furniture | 14,200.00 |
| Total | $ 96,081.71 |

JAMES

| | |
|---|---|
| 1408 East Alton | $ 13,500.00 |
| Proceeds of 1229-31 McCoy, ordered to be sold | 23,450.00 |
| 1500 East Alton | 50,660.00 |
| 1711 East Alton | 14,286.00 |
| Tarsney Lake Lot | 500.00 |
| McCoy Enterprises account, Blue Ridge checking and savings accounts, Federal Employees Credit Union, and profit-sharing plan, net of $1,980 to be paid to Sue | 1,980.00 |
| Rolltop desk | 800.00 |
| Total | $ 105,176.00 |

The court also allocated to James non-marital property valued at $48,750, but Sue challenges none of that except the Santa Fe Enterprises which has already been discussed.

The court explained the unequal division giving, as he said, "approximately $7,500" (actually $9,095) less to Sue, because of her marital misconduct.

■ Sue as a separate point challenges the court's finding of marital misconduct on her part. However, there is circumstantial evidence from which the court could find a romantic involvement with a man who became her employer and business associate. This relationship, according to the evidence, commenced before the separation and became more visible after the separation. The court also condemned as marital misconduct Sue's removal and secreting of property at the time of the separation. During James's absence from town, Sue removed from their residence and secreted all but a few items of furniture and contents, and removed also the Santa Fe automobiles and an antique automobile titled in James's name. This was done without any warning to James and he came home and was surprised to find his wife gone and the house stripped of its contents. We cannot say the court was clearly wrong in finding Sue guilty of marital misconduct nor in placing this value on such misconduct. *Conrad v. Bowers, supra* at 620; *cf. McCall*

*v. McCall*, 574 S.W.2d 496, 498 [1] (Mo.App. 1978).

■ The division of marital property is not required in any case to be equal, but to be fair, and there is a certain range of discretion accorded to the trial judge within which the appellate court will not interfere. *In re Marriage of Lindenfelser*, 596 S.W.2d 71 (Mo.App.1980). We find no reason for disturbing the trial court's division of marital property.

### 6. Accounting for income during separation.

■ Sue next complains that the court did not give her an accounting and an "adjustment of income" for the nine-month period of the parties' separation. She contends, but without citing any cases so holding, that James's income during the separation was "marital property" in which she is entitled to share. She lists the following income received by James during that period: salary from Fireman's Fund Insurance Company, $9,180; Santa Fe Enterprises earnings, $4,500; rental from marital property, $11,895. The income thus received by James during the separation period totaled $25,575. The trial court declined Sue's request and we find that there was substantial evidence justifying the court's ruling on this point, which we shall discuss in succeeding paragraphs.

From the $11,895 rentals collected by James, he paid mortgage payments of $9,331, including $5,085 paid on mortgage payments on the family residence which was being occupied by Sue. He also paid her car payments in the sum of $2,000, utility bills of $436.77, medical bills of $300, car repair bills of $143.42, and paid her $500 cash. Sue also received $2,300 from sale of a Santa Fe automobile, $1,400 for two tractors, $1,665 rent from a house belonging to James's parents, $440 rental from one of the marital properties, and withdrew $688.41 from a joint bank account. The total of the foregoing amounts received by Sue or paid for her use and benefit is $14,958.60.

Additionally, Sue failed to account for a 1965 Mustang, a Benellie motor bike and a refrigerator which she had taken into her possession upon separation, which the court valued at $2,475 ... and for the last 15 weeks of their separation Sue had been employed at $100 per week and had received $1,500.

We believe the evidence amply justifies the court's denying to Sue any "adjustment" for the amounts received by the parties during the period of separation.

### 7. Wife's debts.

Sue's next complaint is that she was ordered to pay debts incurred by her in the sum of $3,886.79. Some of these debts were incurred before the separation, others during the separation. One of the items was a $1,325 indebtedness for air conditioning the residence which was awarded to Sue and which was occupied by her. It was within the court's discretion to require their payment by Sue. *N.J.W. v. W.E.W.*, 584 S.W.2d 148, 151 (Mo.App.1979).

### 8. Attorney's fees and litigation expense.

Sue had incurred attorney's fees of $8,869.50 and other litigation expenses of $457.15. She claims that the court was in error in allowing her only $450 suit money and $3,300 in attorney's fees. The suit money allowance of $450 is quite close to the total amount incurred and it was within the court's discretion to require James to pay only $3,300 of the attorney's fee. *In re Marriage of Heddy*, 535 S.W.2d 276, 279–280 (Mo.App.1976).

### 9. Child support.

And finally Sue objects to the child support award of $187.50 per month. In addition to the $187.50 per month which James was ordered to pay, he was required also to maintain medical and dental insurance on the child. Jason was five years old at the time of the trial. Although low enough, particularly in the absence of maintenance, there was substantial evidence to sustain the amount of the child support. *Roberts v. Roberts*, 553 S.W.2d 305 (Mo.App.1977); *In re Marriage of Davis*, 560 S.W.2d 391 (Mo.App.1977).

The judgment is amended to set apart certain non-marital property, and as so amended is affirmed.

All concur.