**Sharon S. GLENN, Respondent,**

v.

**Donald P. GLENN, Appellant.**

**No. WD 51398.**

Missouri Court of Appeals,
Western District.

Oct. 15, 1996.

James R. Wyrsch, W. Brian Gaddy, Wyrsch, Atwell, Mirakian, Lee & Hobbs, P.C., Kansas City, for appellant.

Philip F. Cardarella, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

LAURA DENVIR STITH, Presiding Judge.

Appellant Donald P. Glenn appeals from the trial court's determination in this dissolution action that Don Glenn Enterprises, owned by Mr. Glenn prior to the marriage and run by him as a sole proprietorship prior to and during the marriage, became marital property because the business' inventory in stock at the time of the dissolution was acquired during the marriage and thus was marital. We disagree. Profits from the sale of inventory acquired prior to the marriage could be used to purchase replacement inventory without changing the status of the business from separate to marital. We further find that there is no evidence that Mr. Glenn intended the business to become marital.

We also find, however, that in determining whether the parties treated the business as marital the court could consider the fact that Mrs. Glenn invested $24,000 in the business and that new valuable leaseholds for two new locations were obtained during the marriage. The court could also consider whether Mr. or Mrs. Glenn was so undercompensated for their contributions to the business that income should be imputed to them. We remand for a determination by the trial court of the extent to which this evidence justifies treating the business as marital. We affirm the portion of the trial court's order requiring Mr. Glenn to pay a portion of Mrs. Glenn's attorney's fees.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

In 1970, Mr. Glenn started his own salvage surplus business under the name Don Glenn Enterprises. Don Glenn Enterprises has always been managed as a sole proprietorship. In such a business, unlike in the case of a partnership, trust or corporation, one person owns all the assets of the business and is solely liable for all the debts. BLACK'S LAW DICTIONARY 1392 (6th ed. 1990). Such was the case with Mr. Glenn. In the course of operating the business, he acquired inventory by the purchase of distressed goods from truck or train wrecks, fires and floods. The salvaged goods were then marketed. In 1975, Mr. Glenn established a retail store named "Dirty Don's" at which he sold these goods.

The parties were married on March 8, 1980 in Las Vegas, Nevada, and returned to live in Kansas City. Mr. Glenn continued to oversee the operation of his business, which had been functioning as a going concern for some 10 years at the time of the marriage. In the years immediately following the marriage the business expanded considerably. These expansions included the addition of a women's clothing store called Off Broadway and the addition of two additional Dirty Don's locations, one in the City Market and one in Kansas City, Kansas.

According to Mr. Glenn's tax returns, Don Glenn Enterprises had gross profits, after accounting for the cost of goods sold, of between $246,000 and $350,000 per year from 1989 through 1993. Its net profits for these years ranged only from approximately $17,000 to $28,000, however, due to other costs such as insurance, property, taxes, salaries, and the like. Mr. Glenn's cash draw during much of that time was consequently only about $300 per week.

Prior to the marriage, Mrs. Glenn had been employed full-time for six years as an autoworker with General Motors. Shortly after the marriage, apparently at Mr. Glenn's urging, Mrs. Glenn quit her job and worked primarily as a housewife. She occasionally worked at Dirty Don's, for which she was compensated at the rate of approximately $260 per week. Mrs. Glenn did have authority to write business checks as payment for merchandise arriving C.O.D. She lacked authority to write checks for the business, however, and she never inspected the sole proprietorship's books, made deposits, purchased merchandise or maintained accounting records.

In addition, Mrs. Glenn managed Off Broadway for about four years, from 1986 until 1990. Despite her managerial position, however, Mrs. Glenn's nominal salary remained only about $260 per week. At one point in the hearing below, Mr. Glenn characterized the $260 salary as really constituting an allowance so Mrs. Glenn would have spending money. The store closed in 1990 after becoming unprofitable.

Both parties maintained their respective personal assets in separate bank accounts during the marriage. Yet, Mrs. Glenn did at some time during the marriage make a financial contribution to Don Glenn Enterprises of between $22,000 and $24,000. It was disputed at trial whether the contribution was actually a loan and whether Mr. Glenn repaid Mrs. Glenn. While Mr. Glenn claimed to have repaid Mrs. Glenn by occasionally giving her "bonuses" after he had completed profitable business transactions, he admitted that there was no record that the bonuses were loan repayments. The trial court re-

solved these conflicts by finding that Mrs. Glenn had made a $24,000 investment in the company and that she had not been repaid for this investment.

By 1990, the parties' relationship began to falter. During that summer the parties had purchased a home in Las Vegas. Although they each occasionally traveled back and forth between Las Vegas and Kansas City, Mrs. Glenn spent most of her time in Las Vegas by herself. In the fall of 1990 she began having an affair while living in Nevada. Mr. Glenn, who also was having an affair near the end of the parties' marriage, continued to provide financial support to Mrs. Glenn while she remained in Las Vegas. His attempts to persuade her to return to Kansas City were largely unsuccessful, and she returned only for brief visits. Mrs. Glenn, however, did return to Kansas City for an extended period beginning in September 1991.

The parties permanently separated on December 10, 1991, and Mrs. Glenn filed for dissolution the following day. After a lengthy discovery period, the first evidentiary hearing was held on March 24, 1994, and was followed by hearings conducted on October 26, 1994, and January 12 and 13, 1995. On June 12, 1995, the trial court entered its judgment, finding that the parties' marriage was irretrievably broken. After setting aside to each of the parties what it found to be their separate property, the trial court divided the marital property pursuant to Section 452.330.[1] Mr. Glenn was awarded approximately $455,380 in marital property and was ordered to assume approximately $300,486 in marital debts and to pay $91,541 to Mrs. Glenn for an equalization of the division of assets. Mrs. Glenn received approximately $168,302 in marital assets and is now solely liable for $152,623 in marital debts.

The trial court further ordered Mr. Glenn to pay $1,100 per month as and for periodic, modifiable maintenance to Mrs. Glenn, as well as to pay $15,000 toward her attorney's fees. Finally, the trial court offered Mrs. Glenn the option of maintaining her health

---

1. Unless otherwise indicated, all statutory references are to RSMo 1994.

insurance coverage under Mr. Glenn's policy at her cost.

Mr. Glenn appeals. The only issues before us now are those regarding the trial court's rulings as to the classification of Don Glenn Enterprises as a marital rather than a non-marital asset, and the award to Mrs. Glenn of a portion of her attorney's fees.[2] We address each issue in turn.

## II. STANDARD OF REVIEW

■■■ In this court-tried case, the trial court's rulings must be affirmed on appeal unless there is no substantial evidence to support the decision, it is against the weight of the evidence, or it erroneously declares or applies the law. *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991). Additionally, we defer to the trial court's determination of credibility, viewing the evidence and inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Id.*

## III. WAS DON GLENN ENTERPRISES PROPERLY CLASSIFIED AS A MARITAL ASSET

Mr. Glenn's principal argument is that the trial court erred in classifying his sole proprietorship, Don Glenn Enterprises, as a marital asset. He notes that he owned Don Glenn Enterprises before the marriage and it remained separately titled in his name. He said that he did not in fact intend to change its status from separate to marital property. Therefore, he says, the basic business remained his separate property.

■■■ We agree with Mr. Glenn that, as a general rule, "property acquired *before the marriage* and which remains titled in the name of the original owner is *separate property* unless the record shows that the owner intended to change the status of the property from separate to marital." *Stottlemyre v. Stottlemyre,* 877 S.W.2d 176, 176–77 (Mo. App.1994) (emphasis added).

By contrast, if the owner intended to change the status of the property from separate to marital, it becomes marital. In addi-

tion, if the property was acquired *after the marriage,* a presumption arises under Section 452.330 that it is *marital.*

Mrs. Glenn argues, however, that the business was, in effect, acquired after, not before, the marriage. In particular, she notes that most of the value of the business is and always has been in its inventory. Yet, she says, all but a few hundred dollars of the business inventory which was in stock before the marriage had been sold by the time of the dissolution. Conversely, nearly all of the business inventory in stock at the time of the dissolution was acquired after the marriage. Thus, the inventory, and the business as a whole, should be considered after-acquired property, and hence its status is marital. The trial judge agreed with Mrs. Glenn, and listed the turnover of the inventory since the marriage as the first of three factors which led him to find that the business was marital property.

We agree with Mr. Glenn that this finding was erroneous. As he notes, the presumption that property acquired after a marriage is marital can be overcome by proof that the property was acquired in one of the following five ways:

1) Property acquired by gift, bequest, devise or descent;

2) *Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, **or descent;***

3) Property acquired by a spouse after a decree of legal separation;

4) Property excluded by valid written agreement of the parties; and

5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

§ 452.330.2 (emphasis added).

■■■ Mr. Glenn argues that he proved the application of subsection (2), for the new inventory was "property acquired in ex-

---

**2.** No children were born of the marriage, although both parties had children by previous

marriages. Consequently, no issues of child support or custody are present in this case.

change for property acquired prior to the marriage," that is, the original inventory. Thus, he argues, the business remained his separate property. We agree that the business' new inventory did not become marital property simply because it was acquired after the marriage. Rather, it should be considered to have been acquired in exchange for the prior inventory, which was separate property, and so remained Mr. Glenn's separate property. Any other ruling would make the exception for exchange of property meaningless in the case of a retail business, an investment business, or any business which by its nature turns over its inventory or portfolio on a regular basis. Merely by engaging in his usual business of selling his inventory, Mr. Glenn did not turn his separate property into marital property.[3]

The trial court listed two other bases for its determination that the business had become marital: (1) Mrs. Glenn had invested $24,000 in the business; and (2) the business had leased and done business at two new locations during the marriage.

In regard to the $24,000, Mr. Glenn claims that this payment by Mrs. Glenn to the business was irrelevant because it was just a loan which he had repaid. By contrast, Mrs. Glenn claims it was an unrepaid investment and that through it she acquired an interest in the business. Because "[n]either party presented the Court with any evidence other than their personal testimony confirming either [party's] position," the trial court had to resolve this issue based on credibility. A trial court is free to believe or disbelieve all, part, or none of the testimony of any witness. *Burkhart v. Burkhart*, 876 S.W.2d 675, 678 (Mo.App.1994).

In this case, the trial judge found Mrs. Glenn more credible. He found that the money was not repaid and that through her contribution of up to $24,000 of her separate funds Mrs. Glenn acquired an interest in the business. There was substantial evidence, offered by Mrs. Glenn, to support these findings. For this reason, Mrs. Glenn's investment provided a basis for the trial court to find that Mrs. Glenn acquired an interest in the business at least to the extent of her investment.[4]

The other factor relied on by the judge below was that the business expanded during the early course of the marriage by using some of its profits to open two new Dirty Don's locations. The value of these leaseholds is part of the current value of the business. While the judge did not explain why he believed that the opening of these two new locations supported his determination that the business had been transformed into marital property, we note that he had the discretion to consider the value of these leaseholds to be marital to the extent that Mr. Glenn obtained them through use of profits which otherwise would have been part of the marital estate. *See e.g., In re Marriage of Coleberd*, No. 20196, —— So.2d ——, 1996 WL 557488 (Mo.App. S.D. Sept. 30, 1996); *In re Marriage of Rickard*, 818 S.W.2d 711, 721 (Mo.App.1991) (profits from rental of separate property became marital property).

In addition, there is authority that, to the extent that a corporate officer is underpaid salary he or she reasonably should have received for managing the business, the amount of underpayment can be imputed to them out of retained earnings which were

3. Mr. Glenn admits that Mrs. Glenn would still have an interest under Section 452.330.2(5) in any increase in value of the business after the marriage to the extent marital assets or her labor contributed to the increase. However, by the time of trial, the trial court determined that the business was worth only $194,904. By contrast, Mr. Glenn testified, at the time of his marriage it was worth between $700,000 and $800,000. While Mrs. Glenn challenges the accuracy of Mr. Glenn's valuation of the business in 1980, she did admit that the business had declined in value over the course of the marriage. Thus, he argues, and we agree, that Mrs. Glenn is not enti-

tled to any of the business assets or profits under Subsection (5).

4. *Compare Signaigo v. Signaigo*, 718 S.W.2d 647 (Mo.App.1986) (wife's contribution to company as seventeen-year employee and by securing a loan of $75,000 for the company by encumbering her separate property not sufficient contribution to transmute status of company from separate to marital property where neither wife's personal funds nor marital funds were ever invested in the corporation).

available but not distributed.[5] While Dirty Don's is a sole proprietorship rather than a corporation, substantially the same result would obtain to the extent, if any, that the trial court believed that Mr. or Mrs. Glenn was underpaid for their work in a legitimate effort to avoid attributing salary to them for financial reasons. On the other hand, if they were paid a reasonable salary in light of the income and expenses of the business, then the fact that the salary was minimal would not affect the determination of whether the business became marital or remained separate property.[6]

■ We cannot determine, on this record, whether the trial judge would have held that the business was fully transformed into marital property based solely on the facts that Mrs. Glenn invested $24,000 in the business and that Mr. Glenn used profits to expand the business into two new locations, nor is it clear to us whether inherent in the factors which the judge did list was a belief that additional income should be imputed to the marital estate. We therefore remand so that the trial court can determine whether these factors justify a finding that the business was completely transformed into marital property, or whether instead these factors justify finding the business marital solely to the extent of the investment and the value of the leases or imputed income. *Cf. Coleberd,* slip op. at 13–14, —— S.W.2d at —— – ——.

## IV. *ATTORNEY'S FEE AWARD*

Mr. Glenn next argues the trial court erred in ordering that $15,000 of Mrs. Glenn's attorney's fees be paid by Mr. Glenn "in that there were no unusual circumstances to deviate from the general rule that each party pay

their own fees and due to the fact that Mrs. Glenn has refused to obtain employment since the parties' separation in 1991, thus creating her own financial need difficulties."

■ A trial court has discretion in awarding attorney's fees in dissolution proceedings and such an award will be reversed on appeal only upon a showing of an abuse of discretion. *Burkhart,* 876 S.W.2d at 680. "To demonstrate an abuse of discretion, the complaining party bears the burden of showing the award to be clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Meservey v. Meservey,* 841 S.W.2d 240, 248 (Mo.App.1992).

■ We agree with Mr. Glenn that in non-dissolution actions, Missouri law generally provides that each party is responsible for paying their own legal fees unless very unusual circumstances are shown. *21 West, Inc. v. Meadowgreen Trails, Inc.,* 913 S.W.2d 858, 881 (Mo.App.1995). But, as Mr. Glenn acknowledges, we held that the "very unusual circumstances" standard was inapplicable to dissolution actions in *Ansevics v. Cashaw,* 881 S.W.2d 247, 251 (Mo.App.1994). In support, we noted that the specific rules concerning the award of attorney's fees in dissolution actions set out in Section 452.355 govern over the more general common law rule. Section 452.355 provides that:

> The court from time to time *after considering all relevant factors including the financial resources of both parties* **may** order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's

5. *Compare Heineman v. Heineman,* 768 S.W.2d 130, 137 (Mo.App.1989) (a retained earnings account was marital property because accumulated earnings would have been paid to the wife as her salary had she elected to take a salary from the corporation); *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 825–26 (Mo. banc 1984) (because wife failed to show that value of separate property increased due to husband's sacrifice of salary or dividends, increased value of separate property would not become marital property).

6. *See Carter v. Carter,* 616 S.W.2d 543 (Mo.App. 1981). In *Carter,* this court held that husband's unincorporated used car business was his sepa-

rate property where the husband operated the business about four years prior to the marriage. During the marriage, wife assisted in the operation of the business, which was run out of their home. The profits of the business were used primarily to purchase real estate titled in the parties' joint names rather than plowed back into the business. *Id.* at 545. Because the husband did not inappropriately treat salary or what should have been salary as if it were business profits in an attempt to prevent it from becoming marital property, no additional salary was imputed to him by the court.

**526**

fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

§ 452.355.1 (emphasis added). We find no support for Mr. Glenn's suggestion that we should ignore this statute and follow the general rule that each party is responsible for their own legal fees. The cases he cites instead support the conclusion that the trial court has a wide discretion in awarding attorney's fees in dissolution cases.

■ We further find unconvincing Mr. Glenn's contention that Mrs. Glenn intentionally weakened her financial situation by not seeking employment following the parties' separation. While it is true that Mr. Glenn continued to support Mrs. Glenn financially during the parties' separation and that the trial court was skeptical about Mrs. Glenn's claims that she was totally unable to work, the trial court also found that Mrs. Glenn's extended absence from the work force and her inability to meet her reasonable needs justified the award. On this evidence, we do not believe the trial court abused its discretion in awarding $15,000 in attorney's fees given the disparate earning capacities of the parties and the lofty legal fees generated by the lengthy proceedings.

For the reasons set forth above, we remand for a redetermination of the extent to which the business became marital property. Because the trial court's redetermination of the status of the business as marital or non-marital property may affect the equity of the remainder of the property division and the award of attorney's fees, the trial court has the discretion to adjust those matters on remand to the extent justice so requires.

All concur.