Eugene Baldwin ANSLEY,
Jr., Respondent,

v.

Joan Marie G. ANSLEY, Appellant.

No. WD 56342.

Missouri Court of Appeals,
Western District.

Feb. 29, 2000.

Rehearing Denied May 2, 2000.

James T. Cook, Kansas City, for appellant.

Linda Faye Turley Dycus, Kansas City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON.

LAURA DENVIR STITH, Presiding Judge.

Joan Ansley (Wife) appeals the trial court's judgment and decree of dissolution of her marriage to Eugene Ansley (Husband). Wife alleges the trial court erred: (1) in failing to award spousal maintenance to Wife because her only assets were non-income producing assets and the evidence established that Wife had been out of the workforce for a number of years and that her job skills were insufficient to support herself without maintenance; (2) in ordering Wife to be solely responsible for the monthly mortgage payments and upkeep on the marital residence pending its sale, because doing so forced Wife to dissipate her marital and non-marital assets, resulting in a windfall to Husband; (3) in setting aside to Husband certain investment accounts as his non-marital property because the only reliable evidence established that the accounts were acquired during the marriage; and (4) in failing to award Wife attorney's fees because the evidence showed that Wife did not have sufficient resources to pay her attorney's fees and Husband's financial condition was far superior to Wife's financial condition. Because we find that the trial court acted within its discretion in resolving the property, maintenance and attorney's fee issues, we affirm.

I. FACTUAL AND PROCEDURAL
 BACKGROUND

Joan Ansley (Wife) and Eugene Ansley (Husband) were married on November 22, 1980, in Atlanta, Georgia. At the time of the marriage, both Wife and Husband were gainfully employed. Husband had a successful career in the banking industry. Wife had a Bachelor's Degree in Economics and a Masters of Business Administration in Finance and worked as a manager in the area of computer software development. In April 1983, Husband and Wife had their first child, Eugene III, and Wife quit her job in order to stay at home. A second child, William, was born in September 1984.

In January 1990, Husband was transferred to a position in the Kansas City area. The family purchased a $425,000

home in Kansas City, Missouri and enrolled the children at Pembroke Hill School. Wife remained at home to care for the children, but participated in several volunteer activities, including administrative work at the Pembroke Hill school office, and computer work for the Junior League. In 1995, Husband was laid off from his place of employment and was given a severance package for the remainder of the year. In January 1996, Husband took a new job in Atlanta, Georgia. Wife and the two children remained in Kansas City, but were to move to Atlanta to be with Husband as soon as the marital residence was sold. In April 1996, before the house was sold, Husband told Wife that he no longer wanted to remain married. In July 1996, Husband filed a Petition for Dissolution of Marriage in Jackson County, Missouri.

From the date of filing until the dissolution hearing was held on November 13, 1997, Wife remained unemployed. She said she did so in order to prepare the home before placing it on the market for sale. Husband sent Wife approximately $6,000 per month during this time in order to assist Wife with expenses, including the $2,500 monthly mortgage payment on the house. In August 1996, Husband's monthly payments to Wife ceased due to the fact the funds from his severance pay had been depleted. Husband, however, continued to pay the mortgage payment on the marital residence through July 1997. Since August 1997, Wife has been responsible for the mortgage payments.

Following the hearing on November 13, 1997, the trial court entered a judgment dissolving the Ansleys' marriage. The court awarded Husband and Wife joint legal custody and joint physical custody of the two children. Husband was ordered to pay the full cost of the children's tuition at Pembroke Hill, as well as $1,036 each month for child support, with full abatement of support during the summer months during which the children were to stay with Husband in Atlanta. The court accepted Husband's proposed division of marital property, awarded the non-marital property, denied Wife's request for $2,500 in monthly maintenance and denied Wife's request for attorney's fees.

Wife filed post-trial motions. On March 10, 1998, the court heard additional evidence which showed, primarily, that the marital residence had not yet been sold, and Wife had begun part-time employment at a retail luggage store earning $6.50 per hour. The court entered an amended judgment of dissolution on May 11, 1998. In its amended judgment, the court entered new findings relating to the denial of Wife's request for maintenance, specifically addressing Wife's ability to become self-sufficient through employment. The court also increased Husband's monthly child support payments to $1,594 per month, ordered the sale of the marital residence, with Wife responsible for all mortgage payments and other costs pending the sale, and allocated 90% of the proceeds from the sale to Wife, and the remaining 10% to Husband. The court further addressed the classification of certain investments as marital or non-marital. It found a Northwest Mutual Life Insurance policy to be marital property, and a Scudder and a Fidelity IRA to be Husband's non-marital property.

Both parties filed post-trial motions. A second amended judgment was entered by the court on July 31, 1998, which revised the court's prior findings relating to the denial of Wife's request for maintenance, but made no other significant changes. Wife appeals.

## II. STANDARD OF REVIEW

 On appeal of a dissolution of marriage proceeding, we review the evidence in the light most favorable to the trial court's decision. *Replogle v. Replogle*, 903 S.W.2d 551, 553 (Mo.App.1995). We will affirm the trial court's decree unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the

decision erroneously declares or misapplies the law. *Crews v. Crews,* 949 S.W.2d 659, 663 (Mo.App.1997). The party challenging the dissolution decree has the burden of demonstrating error. *Id.*

The trial court has wide discretion in determining whether a maintenance award is appropriate. *Ellis v. Ellis,* 970 S.W.2d 416, 417 (Mo.App.1998). We defer to the trial court's findings even if the evidence could support a different conclusion because it is in a better position to judge witness credibility, sincerity, and character and other intangibles not revealed in a transcript. *Id.* The trial court's decision regarding maintenance will not be reversed absent an abuse of discretion. *Id.*Likewise, the trial court's division of property will be disturbed on appeal only if it is so "heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Crews,* 949 S.W.2d at 663.

### III. MAINTENANCE

Wife contends the trial court erred in denying her request for maintenance because, she asserts, the evidence showed she had insufficient assets with which to meet her reasonable needs, and, due to her long absence from the job market, she did not possess the necessary skills to support her needs through employment.

The trial court may award maintenance only if it finds the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to the spouse during the dissolution, to provide for his or her reasonable needs; and (2) is unable to meet his or her reasonable needs through appropriate employment. Sec. 452.335.1 RSMo 1994; *Halupa v. Halupa,* 943 S.W.2d 272 (Mo.App.1997). Even if the spouse seeking maintenance once relied upon the other spouse for monetary support, he or she still has a duty to attempt to become self-sufficient through employment. *Gerecke v. Gerecke,* 954 S.W.2d 665 (Mo.App.1997); *In re Mar-*

*riage of Liljedahl,* 942 S.W.2d 919 (Mo. App.1996).

The trial court did not make express findings as to Wife's reasonable needs, or as to what level of income she could expect to obtain from her assets and employment. The record generally shows that Wife testified she needed approximately $6,530 per month in order to meet her needs and pay for the children's expenses, including the $2,500 monthly mortgage payment on the marital residence, which the court had ordered sold. The court valued the residence at $450,000, with an outstanding mortgage of $276,000. After deducting the mortgage and standard real estate commissions of 7%, this would leave a potential profit on the sale of the house of approximately $142,500. The court ordered that 90% of the profit on the sale of the house to go to Wife. Wife could thus anticipate receiving approximately $128,250 upon sale of the house.

Although Wife was not certain how much a new house and mortgage payments on it would cost her, she believed it would cost approximately $1,500 per month. However, she was merely estimating what a new house would cost her, and the trial court was free to find that her housing cost would be less than she believed. From these facts, and in the absence of more specific evidence as to Wife's future housing costs, the court below could reasonably have found that, in determining whether Wife needed maintenance to meet her reasonable needs, the $128,250 she would get on sale of the marital home would be sufficient to purchase or make mortgage payments on a new home of suitable size. Certainly, in discussing her reasonable needs, Wife treated the mortgage payments separately, and discussed her reasonable needs and those of the children separately from her mortgage obligations.

The record shows that, without consideration of housing costs, Wife estimated her and the children's needs would be approximately $4,030 per month. The court awarded $1,594 in child support, which

leaves a shortfall of approximately $2,436 per month. Wife also admitted that she had met her needs during the prior year of separation with approximately $28,000, which comes to $2,333 per month. Wife testified that she owns Coca–Cola stock which was valued at between $483,000 and $662,000 at various times during the course of the dissolution proceedings, and that she earns approximately $4,000 per year in dividends on this stock. The $4,000 in dividends constitutes additional income of $333 per month, leaving Wife with a monthly shortfall of between $2,000 and $2,103 per month.

 In addition, the record showed that Wife had various bank accounts with balances totaling approximately $90,000. She also had investments which consisted of a life insurance policy valued at $1,893, a $15,454 IRA, a $2,318 IRA, and one-half of Husband's retirement payments to begin at age 65. In determining whether a party has sufficient assets to meet their reasonable needs, the court generally only considers the income-producing, or potentially income-producing, property. *See Monsees v. Monsees,* 908 S.W.2d 812 (Mo. App.1995). The funds in the retirement accounts are not readily available without the imposition of penalties, and should not be considered. *See Van Natter v. Van Natter,* 988 S.W.2d 110, 113 (Mo.App. 1999); *Witt v. Witt,* 930 S.W.2d 500, 503 (Mo.App.1996). But, Wife still had approximately $90,000 in income-producing property, on which she could earn a conservative investment of $5,000 to $6,000 per year. The court was required to consider this potential interest income from investing this property in determining the necessity for, and the amount of, maintenance. *In re Marriage of Clarke,* 950 S.W.2d 11, 13 (Mo.App.1997).

Finally, the record shows that Wife possesses a bachelor's degree in Economics and a Masters Degree in Finance. Although Wife has been absent from the work force for 15 years while she stayed at home to care for her children, the court could have found that Wife did not "shelve" her skills, but remained active in volunteer projects.[1] At the time of the second hearing, Wife testified that she was working part-time at a retail luggage store earning $6.50 per hour, plus commissions, but the court found she was underemployed based on her high level of education. Wife attended career counseling at UMKC and testified that she expects she will be able to find employment earning $25,000 per year.

 Wife basically explained that she did not want to return to work full-time until the marital residence was sold and she and the children were settled in a new home. The court, however, is not required to honor Wife's preference for the timing of her return to full-time employment because spouses are encouraged to become self-sufficient by fulfilling their duty to seek employment. *See Schroeder v. Schroeder,* 924 S.W.2d 22 (Mo.App.1996). Based on the record, Wife was educated and able to work, and while she said she did not want to return to work until after the house sold, the court could have found that two years of waiting for the house to sell was adequate, and that she was able to work and should have income imputed to her. Based on the evidence, the court imputed an income of $25,000 per year, or $2,083 per month, to her. The evidence supported this finding. *Liljedahl,* 942 S.W.2d 919 (it is reasonable for the court to impute income to a spouse).

When Wife's imputed income of $2,083 per month is added to her dividend income on her Coca–Cola stock of $333 per month, and to the $400 to $500 interest income she could reasonably expect to earn on the approximately $90,000 in other assets awarded to her, Wife had sufficient income to meet her reasonable needs, which the trial court could have found were not more

---

1. Although Wife stated that her volunteer experience did not maintain her employability, the court was free to believe Husband's contrary characterization of that experience.

than \$2,333 to \$2,436 per month. We therefore need not reach Husband's further argument that the trial court could have and may have found the fact that Wife earned only \$4,000 per year on stock worth between \$483,000 and \$662,000 was unreasonable, and so imputed additional investment income to Wife based on the amount she would have earned had she sold some or all of the Coca–Cola stock and moved the money to some other equally safe and conservative investment.[2] Even without such an imputation of interest income on the Coca–Cola stock, here there was sufficient evidence that Wife had the education, skills, and ability to supplement her income through employment, dividend income and interest income on her other assets, and that these sources of funds, in addition to child support and the proceeds of sale of the marital home, were sufficient to meet her reasonable needs.

## IV. RESPONSIBILITY FOR MORTGAGE PAYMENTS PRIOR TO SALE

■ Wife asserts the trial court further erred in ordering her to be solely responsible for the monthly mortgage payments, taxes, utilities, insurance premiums, and any necessary repairs on the marital residence pending its sale. Wife asserts the evidence showed she did not have suf-ficient income to meet her reasonable needs, and the order forced her to dissipate her marital and non-marital assets in order to pay the mortgage and maintain the house pending the sale.

The record shows the parties planned to sell the marital residence as early as the Spring of 1996, yet, at the time of the second amended judgment in July 1998, the residence had not yet been sold. Placing the burden of the monthly mortgage payments on Wife obviously was a method by which the court could encourage Wife to sell the residence and to obtain fuller employment. Although, without employment, Wife lacked the necessary income to pay the \$2,500 monthly mortgage payment, and thus had to utilize marital funds apportioned to her in the dissolution in order to make the payments, the court awarded to Wife 90% of the proceeds generated by the sale, essentially reimbursing to her any depletion of her assets.

Based on the facts of this case, it was not an abuse of discretion to require Wife to pay the mortgage and any other costs on the marital residence pending its sale.

## V. MARITAL PROPERTY

■ Wife asserts the trial court erred in setting aside a Scudder Investments IRA acquired after 1980 and a Fidelity Investments IRA purchased in 1985, to

---

**2.** A spouse is not normally required to move marital assets to a more risky investment just to meet his or her reasonable needs, *see, e.g., Grams v. Grams*, 789 S.W.2d 846, 850 (Mo. App.1990); *Eckstein v. Eckstein*, 748 S.W.2d 945, 947 (Mo.App.1988). Husband argues, however, that the court could consider the fact that \$4,000 of income on up to \$600,000 or more in stock is simply not a reasonable return, and that the court could impute interest income at a safe, non-risky investment level. Similar reasoning was applied in *Bybee v. Bybee*, 879 S.W.2d 793, 795 (Mo.App.1994), which concluded that the potential proceeds that could be generated from stock options allocated to a spouse should have been considered in determining whether the spouse had sufficient assets to meet her needs. *Bybee* concluded that a conservative investment of the spouse's share of the options would yield sufficient income, and that doing so was not unreasonable and would not deplete any potential retirement funds. *Id.* It could also be argued that where, as here, the asset has increased in value during the marriage from approximately \$7,000 to up to \$600,000 or more, the court may have determined that there would be sufficient future increases in value to the stock itself, in addition to dividends paid, that the Wife would have sufficient assets to meet her reasonable needs without depleting principal. *See Shook v. Shook*, 997 S.W.2d 103 (Mo.App.1999); *Brooks v. Brooks*, 957 S.W.2d 783 (Mo.App. 1997) (maintenance is not to be awarded for the purposes of building an estate or accumulation of capital). However, even if we were not to find that it was reasonable to impute some income to Wife based on her Coca–Cola stock, we find she had sufficient funds to meet her reasonable needs, and therefore do not finally resolve this issue.

Husband as his non-marital property. Wife asserts Husband failed to rebut a presumption that these assets were marital property.

■ Typically, property that is acquired before the marriage that remains titled in the separate name of its original owner is separate property. *Glenn v. Glenn*, 930 S.W.2d 519, 523 (Mo.App.1996). All property acquired by a married couple subsequent to marriage, however, is presumed to be marital property subject to limited exceptions set forth in Section 452.330.3:

All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

Sec. 452.330.3 RSMo Cum.Supp.1996. Subsection two of the statute provides that marital property is the following:

all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

Sec. 452.330.2 RSMo Cum.Supp.1996.

■ Therefore, since the IRAs were acquired after the parties' marriage in 1980, but before a legal decree of separation or divorce, the IRAs are presumed to be marital property. *Barnes v. Barnes*, 903 S.W.2d 211, 213 (Mo.App.1995). Husband, as the party claiming the IRA as his separate property, bears the burden of proving the property is his non-marital property. *Sprock v. Sprock*, 882 S.W.2d 183, 185 (Mo.App.1994). Husband must rebut the presumption by clear and convincing evidence. *Id.*

Essentially, here the question of whether the property was marital or non-marital was one of credibility. At trial, Husband testified he opened the Fidelity account with $1,000 in 1977, prior to his marriage to Wife in 1980. On cross-examination, however, he admitted that the record showed the Fidelity account was opened in 1985, but testified it had been opened with old bank certificates of deposit (CDs) he purchased prior to marriage. He further testified that the Scudder IRA was purchased out of a rollover from First National Bank of Atlanta CDs. One CD for $1,000 was purchased in 1976, and the other CD was purchased with $850 in 1978 or 1979. Husband testified that although he contacted the companies with whom he made these original transactions, the records were no longer available. Husband states these funds were always kept separate, and no marital funds were ever added to the investments. Thus, Husband asserts, under the source of funds rule, the IRAs remain his separate, non-marital property. *Colborn v. Colborn*, 811 S.W.2d 831, 835 (Mo.App.1991) (under the source of funds rule, the character of the property is determined according to the source of funds which financed the purchase, regardless of date of purchase).

Wife, on the other hand, testified that she was unaware of Husband owning any IRAs at the time of their marriage, and

believed the accounts were opened during the marriage with marital funds, and that they were thus marital property. Wife produced financial statements from 1979 and 1981 which failed to list either the Fidelity or Scudder IRAs, or their alleged predecessor accounts. Husband claimed that the IRAs were not listed on the 1979 statement because that statement only listed a total amount for his assets, without itemizing each individual investment. He further explained that the 1981 financial statement lacked any mention of the IRAs because Wife had prepared the statement and she lacked knowledge of the funds.

Although the evidence surrounding the origin of the funds used to purchase the IRAs is disputed, the trial court was free to believe Husband's testimony over Wife's. *See Al–Yusuf v. Al–Yusuf,* 969 S.W.2d 778, 783 (Mo.App.1998) (trial judge may believe all, part, or none of the testimony of any witness). Believing Husband's testimony, the trial court then could have concluded that no marital funds were expended on the purchase of the IRAs. There was no evidence that the IRAs were ever transmuted into marital property. On these facts, it was not an abuse of discretion for the court to conclude the IRAs were Husband's non-marital property.

## VI. ATTORNEY'S FEES

Wife asserts the trial court erred in failing to award her at least a portion of the $10,000 she incurred in attorney's fees because, she argues, the evidence shows that she did not have sufficient resources to pay her attorney's fees, and Husband's financial condition was far superior to her financial condition.

Section 452.355 authorizes an award of attorney's fees in dissolution cases "after consideration of all relevant factors including the financial resources of both parties." Sec. 452.355.1 RSMo 1994. *See also, Calhoun v. Calhoun,* 934 S.W.2d 14 (Mo.App.1996). It is within the trial court's discretion whether or not to award attorney's fees under Section 452.355. *Glenn v. Glenn,* 930 S.W.2d 519, 525 (Mo. App.1996). To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

Here, Wife emphasizes her need for attorney fees, arguing that she was awarded few liquid assets and that she only earned $6.50 per hour at a part-time job, while Husband earns well over $100,000 per year with fewer monthly expenses than Wife.

The fact that Husband's income exceeds Wife's, standing alone, does not compel the award of attorney's fees. *See Nelson v. Nelson,* 937 S.W.2d 753, 757 (Mo.App.1997). Similarly, Wife's financial need is only one factor for the court to consider. *Id.* In any event, the record showed that Wife could earn $25,000 per year and that there was no reason she could not work full time. Further, Wife cites no authority holding that the court could not consider the fact that she was awarded Coca–Cola stock valued at between $483,000 and $662,000 as non-marital property in determining whether she could afford to pay attorney's fees. Considering these liquid assets and her imputed income, and considering Husband's various obligations, including child support and the high cost of the children's private education, for which he is fully responsible, the denial of Wife's request does not appear so unreasonable and arbitrary so as to shock one's sense of justice.

For all of these reasons, the judgment is affirmed.

Judges VICTOR C. HOWARD and THOMAS H. NEWTON, concur.